## Carmalt *against* Post.

It is a fatal objection to a deposition, that it was not orally delivered before the examiner, in a regular course of judicial examination, and reduced to writing by him or some proper person with his authority.

It is irregular to give a notice to take a deposition upon two days, although they be consecutive.

Mutual indebtedness does not work an extinguishment of the respective debts, without an application of them to each other by the concurrent acts of the parties.

In questions of identity and personal skill, a witness may testify to a belief not founded in knowledge, but the rule is otherwise in respect to facts which may be supposed to be within the compass of memory.

ERROR to the common pleas of *Susquehanna* county.

Caleb Carmalt, assignee of Robert H. Rose, against Simeon Cook, with notice to Isaac Post.    *Scire facias sur mortgage.* The defendant pleaded payment with leave, and replication *non solvit.*    Issue.    The plaintiff gave in evidence the mortgage and assignment of it to him, dated 26th of July 1828, and admitted some direct payments on account.    The defendant, Isaac Post, then gave in evidence certain claims which he had against Rose, and which were of more than six years' standing; and to support them, offered in evidence the deposition of Robert H. Rose, the mortgagor, taken upon the following notice:

" Sir: In pursuance of the above rule, the depositions of witnesses on the part of the defendant will be taken before any justice of the peace of Susquehanna county, at the office of Robert H. Rose, in the township of Silver Lake, on *Friday the twenty-second* and *Saturday the 23d days* of December inst., between the hours of nine in the morning and nine P. M., of those days, to be read in evidence on the trial of the above cause, at which time and place you may attend to cross-examine, if you please."    Which was duly served on the attorney of said Caleb Carmalt on the ninth day of said month.

The defendant objected to the reading of the deposition, and in support of his objection, called Zenas Bliss, Esq., the justice, who testified as follows:

" The deposition was taken before me on the first day mentioned in the notice, and I got through about an hour before sundown. Mr. Carmalt was not there.    Mr. Jessup attended on behalf of Isaac Post.    Between sundown and dark, after I had returned home, Carmalt drove up.    He said he was pleased to find me at home, as he was going to Rose's.    I informed him I had just returned from taking Dr Rose's deposition in his case.    He then

[Carmalt v. Post.]

handed me his interrogatories, and requested me to take them to Rose and take his deposition for him. I asked him whether it would make any difference whether I went that night or the next day. He answered, he did not know as it would make any. The next day my business was such I could not go until night; I then went, presented the papers to Dr Rose, and informed him of Mr Carmalt's request. He said it was not possible for him to do it that night; he said, what can be done? I replied, I did not know. He then said, ' I think the better way will be to write to Mr Jessup and see what his feelings will be upon the subject; and, without a doubt, by Tuesday night I shall have an answer from him.' I then told him I would call on Tuesday night. At that time I again went; he had his answers drawn up; I affirmed him to them, took the papers and sent them to the prothonotary by Squire Milligan, as Carmalt requested me to do. The answers were not drawn up in my presence." " I do not know who drew up the deposition in chief; it was partly written when I got there. I believe Dr Rose was writing some of it when I got there. Mr Jessup was writing the caption at the table when I went into the office. Dr Rose spoke of having answered the questions on behalf of the defendant before, and said he would give the same answers now. I did not put any interrogatories on behalf of defendant to the witness; I did not then know there were any there to be put to him. After Dr Rose had written his answers all down, I affirmed him to them. After the deposition was all written, I looked at the questions a little, and affirmed the witness to it. I think Dr Rose copied his answers from another paper."

Being cross-examined, the said Zenas Bliss, Esq., testified as follows:

" When I came into the office, Mr Jessup said he wanted Dr Rose's deposition taken. It was stated by me that it would take me a long time to write out the deposition; and I said, Doctor, you had better write it yourself. He wrote out the answers, saying he had answered them before, and he would answer them again as he had done before."

The counsel for said Isaac Post then admitted that Dr Rose's former deposition was taken about the 13th day of November preceding, from which the present one was copied.

And the counsel for the said Caleb Carmalt then read to the court, the rule of the same court for taking the deposition of witnesses, as follows, to wit:

" In the common pleas and orphans' court, a rule to take depositions of witnesses to be read in evidence, is of course, and may be entered at any time in the prothonotary's or clerk's office, stipulating ten days' notice to the adverse party, his agent or attorney, when the place of taking depositions is not more than one hundred miles from the court house, and fifteen days' notice when the place of taking depositions is beyond that distance. And if either party

[Carmalt v. Post.]

find it inconvenient to attend at the time and place appointed, he may transmit legal interrogatories to the person authorized to take the depositions, who shall put the same and reduce the answers to writing."

The court overruled the objection to the deposition, and the same was read as follows:

" The said Robert H. Rose being duly affirmed to speak the truth, the whole truth, and nothing but the truth, no person appearing on the part of the plaintiff, and the said Robert H. Rose desiring that his attention might be directed to such matters as he was to testify to, the defendant proposed the interrogatories hereunto annexed; and the said Robert H. Rose, in answer thereto, doth depose and say as follows:

" 1st *Interrogatory.*—What amount has been paid to you by Isaac Post on account of the above mortgage, and at what times?

" *Ans.*—To the first interrogatory he answers (and at my request and in my presence writes down his answers,) as follows: He has no other way of answering this than by giving a copy from his account book, which he has accordingly done, and which he believes contains a correct statement of the account of that mortgage to the date therein given.

" 2. Was or was not the subscription of fifty dollars made by you to the Susquehanna academy, to be paid by Isaac Post for you and on account of the said mortgage?

" *Ans.*—To the second interrogatory he answers, that he does not know the date of what is called the subscription to the Susquehanna academy of fifty dollars; the first entry of a payment by I. Post appears as of the 15th of December 1815. He thinks it very probable that I. Post was authorized to work on his account on the academy the amount stated; it is his impression that he was.

" 3. Were or were not the orders of William M. Doty on you of the 13th of June 1818, of 24 dollars 33 cents; of yours in favour of John Green, dated 20th of April 1820, on said I. Post, of 26 dollars; and on account of sundry goods, &c., of I. & D. Post, amounting to 152 dollars 49 cents; also on account of Isaac Post, of 7 dollars 56 cents, to be applied to said mortgage?

" *Ans.*—To the third interrogatory he answers, that he can not say positively whether the orders and accounts mentioned were or were not authorized by him to be applied on the mortgage in question; but it is his impression that I. Post was authorized to apply whatever of this kind he had, on any debt due by him to the said Rose. He does not know the time when I. Post acquired a right in the land mortgaged by Cook. I. Post can, he supposes, show that.

" 4. Look upon the annexed papers. Are the receipts and statements purporting to be in your handwriting, signed by you? and were they executed and given at the times they respectively purport to be?

[Carmalt v. Post.]

" *Ans.*—To the fourth interrogatory he answers, that the note to I. Post, dated April 10, 1820, on account of John Green, is in the said Rose's handwriting.   So is the one to I. Post, dated November 29, 1826.   So is the one relating to Joseph I. Hubbard, &c., without date; a receipt dated December 15, 1815, to I. Post, for 70 dollars; another receipt to I. Post, dated June 2, 1816, for 30 dollars; and the words, ' the above appears to be correct, R. H. Rose,' at the bottom of an account without date, of which the last item is 110 dollars 52 cents.   Among the papers submitted to the said Rose, appears an order on him by William M. Doty, for 24 dollars 33 cents, dated June 13, 1818; the said Rose has examined an account with the said William M. Doty, and finds him charged, in 1818, (no month stated,) with an order to I. Post, 23 dollars 33 cents; this differs one dollar, but he supposes it to mean the same.   With respect to a long account beginning April 5, 1818, and ending April 10, 1827, the said Rose, after expressing his confidence in the fairness of any statement made by I. Post, says that he has no recollection of the items composing the account, but that whatever I. Post was entitled to, he was entitled to apply on any debt due from him to the said Rose.

" 5.  Do you know of any other matter or thing material for the defendant to prove in this case?   If so, state them fully, as if particularly interrogated thereto.

" *Ans.*—To the fifth interrogatory the said Rose says, that he recollects nothing further that would be material for the defendant.

" R. H. Rose."

Taken, affirmed and subscribed this 22d day of December 1837, before me,                           Zenas Bliss, J. P.

The court below charged the jury in substance, that, if the parties were mutually indebted to each other, the one by the mortgage and the other by the accounts and claims given in evidence, the law set one off against the other and extinguished the mortgage *pro tanto*, and that the statute of limitations did not, therefore, affect the defendant's set-off.

*Case*, for plaintiff in error.
*Post*, for defendant in error.

The opinion of the Court was delivered by

Gibson, C. J.—The rule to take depositions was irregularly executed.   It is, to say the least, unusual, and productive of uncertainty, to assign two days for the attendance of the opposite party, though they be consecutive; and its regularity can be sustained only by subjecting the magistrate to the burthen of keeping the examination open during all the indicated time, or at least till the opposite party appear, or send in cross interrogatories to be propounded where there is a rule for it.   It is much better to give notice only of the period of commencement, leaving the party on the other side to

VIII.—2 K*

take notice of the periods of adjournment. The notice was deficient, also, in the omission of the examiner's name, which ought to have been inserted to enable the plaintiff to transmit cross interrogatories to him in a sealed envelope. To have transmitted them to any one else, would have availed but little, as the custody of them in the mean time ought to be secret and confidential, to give them the abruptness of a cross-examination. Were it necessary to decide it, however, we might, perhaps, find that the plaintiff had waived the irregularity of it, by having allowed his interrogatories to be subsequently answered out of time. But the magistrate made a fatal mistake in the previous delivery of them to witness.

. It was an unanswerable objection to the deposition, also, that it was not taken in such a course of examination as is pointed out in Armstrong v. Burrows. It would be vain to object to an irregular deposition, if the contents of it might be copied out upon a subsequent examination, and reproduced without an alteration even of its form. The testimony was decisively inadmissible, because it was not orally delivered before the examiner in a regular course of judicial examination, and reduced to writing by him, or some proper person with his authority.

But to pass from the manner of it—did it contain evidence of satisfaction to be left to a jury? The first item of which the witness spoke, was his subscription to the Susquehanna academy, alleged to have been paid for him by the terre-tenant while the witness was the owner of the mortgage; in relation to which he thought it probable that the terre-tenant was authorized to discharge it; it was the witness's impression that he was. Of sundry orders and accounts, he could not state positively whether the terre-tenant was authorized to apply them to the mortgage in question; but it was his impression that he was authorized to apply whatever he had of the sort to any debt due by him to the witness. And in relation to another account, he repeated that he had no recollection of the items, but that he had great confidence in the representations of the terre-tenant, and that whatever the terre-tenant was entitled to, he was entitled to apply to any debt due by him to the witness. In all this, which comprises the whole evidence on the point, there is not a word about actual application by the joint act of the parties.

Had not these demands been excluded by time, they might have been set off against the plaintiff on the authority of Matthews v. Wallwyn, 4 *Ves.* 118; Williams v. Sorrel, *Ibid.* 389, and Chambers v. Goldwin, 9 *Ves.* 254. Though the assignee of a mortgage, being invested with the legal title to the land as a security, may have a *scire facias* on our statute in his own name, the mortgage debt is the principal in equity, and a chose in action not legally assignable; consequently a mortgagor who has not concurred in the assignment, is not bound by the amount apparently due on the face of the mortgage. He may, therefore, set off demands due by the mortgagee at the time of the assignment, or defalcate payments before notice

[Carmalt v. Post.]

from the assignee, who stands in the place of the mortgagee. But the cross demands, in the case before us, had long been barred by the statute of limitations; and the question is whether the testimony affords a spark of proof that they had formerly been settled and allowed. Now there could be no such thing as payment without mutual extinction of debts, and that could not be had without an application of them to each other by the concurrent act of the parties. In the syllabus of The Commonwealth *v.* Clarkson, 1 *Rawle* 291, it is contained as a general rule laid down by the court, that mutual demands extinguish each other by operation of law, and without actual defalcation by the parties: a position not indicated by the text which contains no more than specific exceptions from a general rule to the contrary. These exceptions may depend on various circumstances, such as the intervening rights of creditors under the intestate laws, and a concurrence of the rights of debtor and creditor in the same person; to which was added, in that case, the intervening right of the commonwealth to tax fees actually in the hands of its officer. Now, though it was testified in the case before us, that the terre-tenant had a right to apply his cross demands, what could that avail him without an actual application of them? It could work no extinguishment by the act of the law, and there was certainly no proof of it by the act of the parties. It was an invitation to err, therefore, to leave the fact, without a show of proof of it, to the jury.

But there was no proof, even, of an unexecuted authority. The witness alleged, not that he had any knowledge or recollection of the fact, but that he had an impression of it. Now, though a witness is not required to swear positively, and though in questions of identity and personal skill he may testify to a belief not founded in knowledge, the rule is otherwise in respect to facts which are supposed to lie within the compass of his memory. *Gerh. Starkie* 153. It is not sufficient that he has found an impression resting on his mind, so faint, perhaps, as scarce to be discernible, without being able to tell what made it or how it came there; for a jury would inevitably fall into error had they no other guide than the dim footsteps of an exhausted recollection. In the present instance, the witness did not say he believed that the terre-tenant had an authority: he only thought it probable that he had. But a jury are not to determine by the light of probabilities. The general rule of the earlier text-writers, that a witness shall not say he thinks, or believes, or persuades himself, certainly has its exceptions; but it would be extremely dangerous to receive, as testimony of a fact susceptible of direct proof, a witness's naked impression. In every respect, then, the evidence was deficient.

Judgment reversed, and a *venire de novo* awarded.