## Post *against* Carmalt.

Mutual debts do not *per se* extinguish each other: to effect such extinguishment, there must be some act of the parties, whilst debtor and creditor, by which they determine that one shall go in satisfaction of the other; which act must be of binding efficacy, so as to accompany the claims into whose soever hands they may pass.

ERROR to the Common Pleas of *Susquehanna* county.

Caleb Carmalt, assignee of Robert H. Rose, against Simeon Cook, with notice to Isaac Post, *terre tenant.* This was a *scire facias* upon a mortgage, and the same case which is reported in 8 *Watts* 406. The defendant pleaded payment with leave to give the special matter in evidence, and in pursuance of the rules of court, gave the following notice of his defence:

" The *terre tenant,* Isaac Post, under his plea will give in evidence:

"Payments to Robert H. Rose, per his receipts,

| | |
|---|---:|
| "2d January    1816, - - - - - - - - | $30 00 |
| " 15th December 1815, - - - - - - - - | 70 00 |
| " 8th January    1817, - - - - - - - - | 193 92 |
| | $293 92 |

" And also that the said Robert H. Rose subscribed to the Susquehanna Academy the sum of fifty dollars, which sum was by the trustees of said Academy assigned to the said Isaac Post, and the said Robert H. Rose requested the said Isaac Post to charge the same in account between them, and it should apply to said mortgage, to be applied as of January 1818.

" Also an order of William M. Doty of $24.33, dated 13th June 1818, which the said Robert H. Rose agreed to take and apply as aforesaid. Also an order of Robert H. Rose, 10th April 1820, in favour of J. Green, for $26.00. And the said Isaac Post will also give in evidence an account of the said Isaac Post and David Post against the said Robert H. Rose, amounting to $152.49; and prove an admission and agreement of the said Robert H. Rose, that the said account should apply in payment of said mortgage.

" Also an account of the said Isaac Post against the said Robert H. Rose of $7.56. The first of said accounts under dates from the 5th of April 1818, to 13th December 1819; and the last from 19th September 1821, to 10th April 1827.

" And the said Isaac Post will insist that so much of the said sums as may be necessary to satisfy said mortgage, shall be applied to the same."

The plaintiff replied the Statute of Limitations to the defendant's set-off.

The defendant, after giving in evidence the accounts mentioned in his notice of special matter, called ʻDr Rose as a witness, who testified as follows:

" I have a very indistinct recollection, but if I could be permitted to refer to my papers," (witness then examined some papers, and proceeded,) " there was an account unsettled with Isaac Post. I had the two mortgages of Simeon Cook and J. J. Hubbard, on which he was to apply any unsettled account which he had—not any specific account—but any account which he had —he did apply some, as you have heard. I subscribed $50 to the Academy, which I think Mr Post answered for me.

" The Doty order is correct for $23.33, and I charged to Doty in 1818, $23.33 for this order. I have examined the account of Post. This account was sent to me at the time it bears date. The orders produced are mine. It is so long since that I can't particularly recollect the delivery of the articles. I believe the account is correct." (Account commencing April 5th 1818, of I. & D. Post, and ending December 13th 1819; and account of Isaac Post commencing September 19th 1821, and ending April 10th 1827.)

David Post testified as follows:

" At the time my brother and I were doing business in partnership, it was understood that my brother was indebted to Dr Rose for land, and it was understood between us that he was to have the account made by Dr Rose to apply on what he was owing Dr Rose for land. I don't know that Rose knew any thing about it."

Robert H. Rose, being recalled, testified as follows:

" The accounts of I. & D. Post were to apply on what Isaac Post was owing for land. There was no specific account spoken of, but the account in the store was to be applied."

The court below, in answer to a point put by defendant's counsel, thus instructed the jury:

CONYNGHAM, President.—This cause has been heretofore before the judges of the Supreme Court, and they have sent it back here for another trial, laying down the law which must govern both court and jury at this time. We do not discover that in the evidence now there is any material difference to vary the rule laid down by the Supreme Court. Dr Rose is only more distinct and positive now with regard to the authority to appropriate the claims on the part of Mr. Post, a view of the case which the Supreme Court assumed in their opinion; and we consider, therefore, that the rules by them stated must still apply to the case. We

[Post v. Carmalt.]

say to you, therefore, that there is no evidence before you at this time, of any application of these debts to each other by the joint or concurrent act of the parties *before* or *previous* to the assignment of the mortgage to Mr Carmalt; and therefore, that as far as Mr Carmalt is concerned, there is nothing in the case to estop the operation of the Statute of Limitations on the claims or offsets of the defendant. Consequently, that such claims and offsets are barred, and should not now be allowed, and that the plaintiff should recover the otherwise conceded balance due on the mortgage.

*Williston*, for plaintiff in error, referred to the testimony of Dr Rose, and argued that it should have been referred to the jury as a matter of fact whether the parties had not made an actual appropriation of the accounts as set-off to the mortgage, and that the jury would have been justified in so finding.

*Case*, for defendant in error, argued that the testimony amounted to nothing more than an expression of the willingness of the parties that the appropriation might be made, but that it clearly appeared that it never had been made. The proof was too vague and uncertain to submit to a jury.

The opinion of the Court was delivered by
SERGEANT, J.—This case is not, in the point now discussed, placed in a situation materially different from that which it presented on the former writ of error. It is urged that the present evidence of Dr Rose goes positively to show an agreement between him and Post, that the claims of Post should be applied in discharge of the mortgage, which the court below ought to have left to the jury; whereas, they charged that there was no evidence that could, in point of law, alter the character of these claims, and bar the operation of the Statute of Limitations upon them. Taking the testimony of Dr Rose alone, and without referring to the other evidence in the case, it is, in our opinion, too loose and uncertain in its character to justify the inference that any application of these claims had been made by the joint or concurrent acts of the parties prior to the assignment of the mortgage from Rose to Carmalt, so as to preclude the assignee from insisting on the bar by lapse of time. It is settled, that mutual debts do not *per se* extinguish each other. *Himes* v. *Barnitz*, (8 *Watts* 39); *Carmalt* v. *Post*, (8 *Watts* 406). To effect such extinguishment, there must be some act of the parties, whilst mutually debtor and creditor, by which they conclusively establish that one shall go in satisfaction of the other, which act must be of binding efficacy, so as to accompany the claims into whose soever hands they may pass, and fix definitively their character, and determine whether they still subsist as debts, or become cancelled and extinguished.

[Post v. Carmalt.]

But all that Dr Rose says is comprised in a line or two: that the unsettled accounts between them "were to be applied on what the defendant owed for the land." This apparently means that such was the purpose and intent of the parties, and that if either had requested the application to be made, it would not have been refused. But he does not allege that this was ever done; nor does he state that there was any positive and fixed agreement between them to that effect, which would conclude them, nor state when or where, or on what occasion such agreement was made. The design is left inchoate and incomplete, to be performed at some future day; and if before that day either party chooses to assign his claim to a third person, without having effected this purpose or intent, and without any express arrangement on the subject, the assignee might well contend, that what was intended to be done never was done, nor any act completed which would be equivalent in its legal operation. No particular mode of making such application, either by endorsement or settlement of accounts, (though these, perhaps, would be the safest modes) is designated by law, but certainly there must be some positive and definite act or agreement by which both parties are bound, and not a floating general intention or willingness which either may relinquish, and which he must be considered as relinquishing who assigns his claim to a third person for a valuable consideration, and without notice, as appears to have been the case; otherwise third persons would be prejudiced by latent intentions in the breast of the assignor, never executed, and never communicated to them. For these reasons, we think there was no error in the charge of the court.

Judgment affirmed.