Bartley, J.
The determination of this ease involves an.inquiry-touching the correctness of the ruling of the court of common pleas ip regard, first, to the competency of evidence admitted against the objections of the plaintiff in error; and, second, in regard to the competency of a witness not allowed to testify on behalf of the plaintiff in error, on the trial of the cause before a jury,
I. It is claimed, on behalf of the plaintiff in error, that the common pleas erred in overruling the objection to the fifth question and answer to the deposition of Truman W. Mead, read to the jury on the trial below, on the part of the defendant *in [409 error. This part of the deposition is contained in the following words, to wit:
“ State whether it was then, in this conversation, understood between "Vandecker and Crowell that they would sign the note with Rnowlton; or state what you understood from them as to that ?
“ Answer — I understood from the conversation between them, • that it was understood between themselves to sign the note with Knowlton.”
No objection to this question and answer appears to have been noted on. the deposition, or previous notice thereof given to the defendant in error, but the objection was made at the time the deposition was offered on trial. And the only ground of objection urged in the argument', submitted by the counsel for the plaintiff in error, is, that the question was leading in its form. If this was the only objection existing to this part of the deposition, the question of the competency of the evidence would require but little considei’ation. Eor, waiving the inquiry whether the question was, in form, leading, suggesting to the witness the answer which the interrogator sought to elicit, it is sufficient to say that the objection was not noted'on the deposition, or notice thereof given to the opposite parfiy before the commencement of the trial. Exceptions to depositions for other causes than the competency of the witness, or the relevancy of the testimony, should not be heard unless noted on the depositions, or notice thereof given to the opposite party, before the cause is called for trial. Objections to parts of depositions, merely formal in their nature, will be taken *410 to have been waived, if not made, or notice thereof given to the other party until after the trial has commenced. To prevent parties from being taken by surprise during the progress of a trial, and for the furtherance of justice, this is required by the general principles of practice in the absence of any adopted rule of court to that effect. Such was the practice which was recognized as correct in the case of Ash v. Barlow, 20 Ohio, 127, and fully laid down by the court in the case of Cowen v. Ladd, 2 Ohio St. 224. The objection that a question is leading in its form, is an objection 410] not to the ^substance or relevancy of the evidence, but to the form arid manner of obtaining it, and should be made at the time the question is propounded; but if not made then, or within proper time before the cause is called for trial, it will be fairly and reasonably taken to have been waived.
But there is a more serious objection to this evidence which we do not feel at liberty to pass over, and which goes not to the mere form of the examination of the witness, but to the substance or competency of the testimony itself. The interrogatory calls, not for the conversations or admissions of the parties, but the understanding of the parties inferable from their conversation, or the understanding of the witness derived therefrom. And the answer is strictly responsive to the question, and gives the understanding or inference of the witness touching the understanding or conclusion of the parties from the conversation. The true effect of this part of the deposition will be more clearly apparent from its connection with what precedes and follows it, as will be seen from the following extract from the deposition:
“ 4th Question — While you were in their employ, what, if anything, did you hear said by either Vandecker or Crowell about their signing a note with the other defendants in this suit to the Western Reserve Bank ? Please begin at the commencement of said conversation and state all you heard, and where it occurred, and who was present.
“Answer — I was in their store. Khowlton and Crowell were present. Knowlton wanted Crowell to sign a not© to the Western Reserve Bank. Crowell rather objected. He (Crowell) did not want to sign the note unless he could be secured. He said he would see Yandecker about it. He left the room. Soon Crowell and Yandecker came down irito the store-room together. Crowell remarked that he was satisfied that Knowlton had money enough coming from the west to secure him; the money was coming through *411 Vandecker’s hands. They could retain it and apply it. Crowell remarked, that we will or would help the poor devil out of the scrape.
“ 5th Question — State whether it was then in this conversation understood between Vandecker and Crowell, that they would sign the note with Knowlton; or state what you understood from them as to that?
“ Answer — I understood from the conversation between them, that it was understood between themselves to sign the note with Knowlton.
“ 6th Question — What did you, at the time Crowell made the remark, 1 we will help the poor devil out of the scrape,’ understand Crowell to mean by this remark ?
*“ Answer — My understanding was, that they would help [411 him to the money by signing the note.”
The following appears in the cross-examination of the witness :
“Did you get the understanding that Crowell and Yandecker agreed to sign the note from anything said, except the conversation stated in your reply to the fourth question ?”
“ Answer — I did not.”
It appears that the plaintiff below was not content with the statements of the defendants tending to maintain the action; but after the witness had related the conversation of the parties, he was further interrogated, and required to state his understanding or inference from the conversation, as to the understanding or meaning of the parties.
The general rule is, that a witness must depose to the facts within his knowledge, leaving the inference or understanding from the facts to be drawn by the jury. It is true, there are some excep.tions to this rule. On questions of science, skill, trade, identity of a person, etc., witnesses have been allowed, besides testifying to. the facts, to express their opinion or belief. And perhaps where the evidence consists of a close and long-continued observation of conduct, not capable of specification, so as to leave it like ordinary facts as a matter of inference to the jury, the opinion of a witness may be proper. McKee v. Nelson, 4 Cowen, 355. But to allow a witness, after having narrated a conversation of one of the parties, to be interrogated (and that, too, by the party calling him, notwithstanding the objection from the other side), and to state his concluí sion or understanding from the conversation as to the meaning or *412, 413 understanding of the parties holding the conversation, would be a most dangerous relaxation of the rules of evidence, unwarranted by any reported decision which has fallen under our observation.
A witness in his examination may be allowed sometimes to state his impression. This results from the fact that a witness can not be 412] required to depose positively, when his ^recollection of the matter stated is not distinct and certain. Rut the impression of a witness, to be admissible, must not be the result of a process of reason and judgment, but simply a fact impressed upon his memory, and of which his recollection is not sufficiently distinct to arise to positive assurance. And this is a kind of evidence to be received with great caution, and to be strictly guarded from the- liability to error. It is not sufficient that the witness has an impression on his mind so faint as to be able to toll certainly what made it, or how it come there. Judicial investigation would inevitably fall into error, if guided by the dim impress of a mere image on the mind of a witness with an exhausted recollection of the fact.
No class of testimony, perhaps, is more unreliable, and a more ffrequent cause of error in courts of justice, than the narration of conversations, real or pretended. The meaning and intention of a person in a conversation, often depend much upon gesture, attitude, imode of expression, or peculiar attending circumstances, known, perhaps, to but few present. A conversation may not be fully heard by the witness, imperfectly recollected, or inaccurately re•peated, when the omission or addition of a single word, or the substitution of the language of the witness, under color of bias or excitement, for the words actually used, might change the sense of ¡an entire conversation. This is apparent from the irreconcilable .contradictions daily manifested in the narration of the same conversations from the mouths of different witnesses. The liability to error, in this kind of testimony, would be greatly increased by r allowing witnesses to add their own conclusions, or understanding, from the conversation related, or their inferences as to the understanding of the parties to the conversation. Such latitude would break down an important barrier, which protects judicial investigation from error and falsehood. The understanding or inferences of witnesses are very frequently formed from bias, inclination, or interest. And a witness’ understanding or inference from a conversation or •413] transaction, rests ^entirely in his own mind, and his consciousness of falsehood would be incapable of proof: so that there *414 could be no possibility of convicting a witness of perjury on the ground of such evidence.
It was held by the Supreme Court of Maine, in the case of Whitmore v. Freese, 23 Maine, 185, that where a witness, in testifying to an admission, has stated the words used, it is not competent for the party calling him to ask the witness what he supposed was intended by those words.
In the case of Carmalt v. Post, 8 Watts, 406, the Supreme Court of Pennsylvania held, that although in questions of identity and personal skill, a witness may be permitted to testify to his belief not founded in knowledge, yet that the rule is otherwise in respect to facts which may be supposed to be within the compass of memory. The same doctrine was recognized in New York, in the case of Murray v. Bethune, 4 Cowen, 191.
In the case of Burt v. Gwinn, 4 Harris & Johns. 507, the court of appeals, in Maryland, held, where a part of the testimony of a witness was, “ that the sum of $150, retained by W., as he, thp witness, understood and presumed, was about the sum intended to be charged for discount upon the said note,” that the expression, “ as he, the witness, understood and presumed,” taken alone and unconnected by others used by him, imported his opinion, and were in themselves inadmissible evidence; but as they could not be separated from the other part of the testimony without doing more mischief than the retaining them would do, they were admissible evidence. It is not necessary to pause here to inquire whether, upon this authority, error can be sanctioned in any case on account of its connection with truth ; or how far incompetent evidence can be admissible on account of the connection with competent evidence. It is sufficient to say, that even tested by this adjudication, in the State of Maryland, the court below erred in the admission of tire testimony in question in this case.
*11. It is also claimed that the common pleas erred in ad- [414' mitting in evidence the mortgage deed of Yandecker & Crowell, relating to a different transaction, to indemnify sundry persons against their liability as sureties of said Yandecker & Crowell. This instrument, with the accompanying evidence of its-execution by Crowell himself, using the firm name, tended to prove by the jact and conduct of Crowell, both the existence of the partnership and the name in which the firm did business. We are uhable to perceive any valid ground of objection to this item'of evidence. *415 If it were competent to prcive the existence of th.o partnership and the name of the firm by the verbal admissions, or ordinary business transactions and conduct of the defendant, it would certainly be strange if the same thing could not be shown by the acts of the defendant, Crowell, under the solemnity of his deed.
III. It is insisted further that the common pleas erred in ruling against the competency of Calvin P. Knowlton as a witness on behalf of the defendant, Crowell. This person was the principal on the note, and one of the defendants in the suit who suffered judgment by default. The general rule of the common law that a party to the record, in a civil suit, can not be a witness, either for himself or his co-suitor in a cause, is subject to numerous exceptions. And, it is said, that one of these exceptions is to be found where, in a suit against several defendants, the situation of some of them is essentially changed in the progress of the suit by default or nolle prosequi. It has been held that where a suit is ended as to one of several defendants, and he has no direct interest in its event as to the others, he is competent as a witness for them. We learn from the elementary treatise of Greenleaf, on the law of evidence, that, “ in actions on contracts, the operation of this rule is generally excluded ; for the contract .being laid jointly, the judgment by default against one of several defendants, will operate against him only in the event of a verdict against the others; and, accordingly, 415] he has been held inadmissible in such ^actions as a witness in their favor.” The adjudications, however, have not been uniform on this point, either in this country or in England, but it appears that the greater weight of authority is against the competency of the witness.
The case of the Preble County Bank v. Russell, 1 Ohio St. 313, is distinguishable from the case before us. In that case the judgment had been taken, the damages assessed, and the suit finally ended as to the witness Russell, before he was called on as witness; whereas, in this case, Knowlton, who was offered as a witness, was a party to the issue, which the jury was sworn to try, so far as the assessment of damages was concerned.
The original suit in this case was instituted before the code of civil procedure in this state took effect, and, according to the decision of the Supreme Oourt, in the case of the Clinton Bank of Columbus v. Hart, 19 Ohio, 372, the statute of March 12, 1844, authorizing separate defenses and judgments in suits against the orig *416 mal makers and indorsers of promissory notes or bills of exchange, has no application to suits by incorporated banks.
For the reason, however, of the admission of incompetent evidence by the court below, contained in the deposition of Truman W. Mead, the judgment is reversed, and the cause remanded for further proceedings.