## Washington National Insurance Co. v. Jonnet Development Corp.

*Lawrence N. Ravick,* for plaintiff.
*David Abrams,* for defendant.

ROSS, *J.*, September 1, 1978—Plaintiff, Washington National Insurance Company, filed a petition for declaratory judgment naming Jonnet Development Corporation as defendant. Plaintiff seeks payment of mortgage installments due March 1 and April 1, 1976, totaling $22,010. Defendant had tendered $16,588.30 as payment for the installments deducting a credit for $1,647.20 interest on a stand-by fee allegedly returned late to defendant as well as a credit for $3,775 for allegedly excess counsel fees paid by defendant.

Plaintiff also seeks default interest at the rate of 13 percent per annum on the unpaid amounts along with counsel fees exceeding $5,000 for collection.

Defendant's answer denies default, asserts plaintiff refused the tendered installment payment and that defendant had a right to deduct its credit for interest and "over-payment" of counsel fees therefrom.

Defendant has counterclaimed for $2,892.50 against plaintiff to recover "an unjust gain" by plaintiff derived from allegedly coercive tactics used to compel defendant to pay an extension fee to maintain the commitment for a loan notwithstanding the fact that plaintiff's assignee B.B. Cohen allegedly could not close the loan on its original settlement date.

A non-jury hearing was held by the court.

### FACTS

The court finds the following facts from the fair preponderance of the credible evidence:

Plaintiff is an Illinois corporation with its address at 1630 Chicago Avenue, Evanston, Illinois. De-

fendant is a Pennsylvania corporation with its address at 905 Jonnet Building, Monroeville, Allegheny County, Pa.

On December 19, 1974, defendant submitted to B.B. Cohen Company a loan application requesting Cohen to issue or secure a commitment for a loan for defendant (Exhibit 1). In its application defendant agreed to deliver to Cohen eight specified documents including a title insurance commitment, a survey and executed counterparts of existing leases. Cohen was authorized under the loan application to deduct counsel fees from the loan proceeds and defendant was required to deposit with Cohen a stand-by fee of $32,700 to be returned to defendant when the loan was delivered to the institution lender which made the loan commitment or bought the loan after disbursement. The application provided that the commitment would remain in force for five months from the date of the commitment and the loan would only be disbursed before the expiration of the commitment.

Cohen issued its commitment for the loan to defendant on April 28, 1975 (Exhibit 2). Among the commitment terms were provisions that eight items such as rent loss insurance were to be provided, that other documents were to be submitted and that Cohen would be represented by its choice of Pennsylvania counsel to be paid by defendant. Cohen's counsel on August 26, 1975, advised counsel for defendant that in addition to the items set forth in the application (an interim title binder, survey, certified copies of leases) other items (taking up three pages) should be furnished in order for the closing to be held. Once these items were received, Cohen's counsel indicated it would prepare the necessary documents.

Less than a week before September 28, 1975, the

date the loan commitment was to expire, defendant had not furnished numerous items requested in the loan application of December, 1975, such as the interim title binder, lease copies or an accurate survey. Although the title binder was received by Cohen's counsel September 27, 1975, all the lease documents were still not received. The mortgage notes to be prepared by Cohen's counsel had not been sent defendant.

A Cohen vice president, Roger Ruttenberg, advised defendant by telephone the commitment was about to expire and unless an extension were requested by defendant and given by Cohen, the loan could not be issued. Cohen's counsel wrote counsel for defendant October 3, 1975, confirming the expiration of the commitment but that Cohen was seeking an extension from the ultimate mortgagee (Exhibit J).

October 13, 1975, Cohen advised defendant an extension would be granted until November 15, 1975, upon payment by defendant of an extension fee of $2,892.50 by October 22, 1975. Defendant accepted this offer October 17, 1975. See Exhibit 14. Defendant attached no protest or condition to its written acceptance of the extension fee and by letter dated October 20, 1975, enclosed the $2,892.50 without written protest or condition although dismay was expressed in the letter by defendant who orally protested. The October 20, 1975, letter indicated to Cohen counsel fees should not exceed one quarter of one percent of the loan. Roger Ruttenberg telephoned defendant upon receipt of the October 20, 1975, letter rejecting the limitation of counsel fees, indicating defendant had agreed earlier to pay the fees in toto.

October 31, 1975, Cohen's counsel wrote defendant numerous documents were still required for

closing and informed defendant its counsel fees were $6,500 plus expenses (Exhibit 10). The counsel fees were reduced to $6,000 including expenses by letter dated November 5, 1975 (Exhibit 11).

Defendant paid the $6,000 in counsel fees at the November 10, 1975, closing without written protest or condition although oral protest was made that it was excessive (Exhibit 12). At the closing defendant submitted to Cohen's counsel, Francis J. Carey, Jr., Esq., a letter authorizing Cohen to disburse the stand-by fee to Citizens National Bank of Evans City (Exhibit E). Carey acknowledged receipt of the direction and told defendant he would send it to Cohen without agreement by Carey or any Cohen representative to carry out the instruction. No discussion had been held at that time or previously as to the time of the return of the stand-by fee.

At the closing Cohen loaned defendant $1,090,000 in return for the execution and delivery to Cohen by defendant of two promissory notes. Security given for the notes was a mortgage on certain real, and personal property situated in Monroeville, Allegheny County, Pennsylvania, recorded in Mortgage Book Volume 6210, page 405. Cohen assigned the mortgage and note to plaintiff on November 26, 1975 (Exhibit 5).

Defendant agreed in the note to pay on account of the principal sum plus interest at the rate of ten and one-half per cent beginning January 1, 1976 (Exhibit 3). Article 25 of the mortgage provided defendant was to deposit an additional sum sufficient to pay real estate taxes and insurance premiums when due. The principal, interest and tax and insurance escrow payment amounted to $11,005.25 per month.

Defendant did not supply many of the required closing documents at the closing which was held to accommodate defendant on the understanding the

documents were to be furnished thereafter. Defendant supplied some documents but not all and January 13, 1976, Cohen's counsel advised defendant's counsel that certain documents were still unsupplied (Exhibit 13).

Cohen retained the stand-by fee to ensure receipt of the required documents so that the complete loan could be fully delivered to plaintiff to whom an assignment of mortgage had been made November 10, 1975.

After substantial delivery of all documents, by letter of February 6, 1976, Cohen returned the stand-by fee to defendant (Exhibit G).

April 20, 1976, defendant sent a check for $27,593.55 as payment in full for the February, March and April, 1976, payments (Exhibit 9 and C). Defendant claimed credit of $5,422.20 for interest of $1,647.20 on the stand-by fee and the balance of $3,775 for "excess" counsel fees paid at closing. Defendant asserts counsel fees should not have exceeded $2,725 or one quarter of one percent of the amount of the loan as indicated by his letter of October 20, 1975 (which offer was rejected by Ruttenberg who told defendant the original agreement subsisted).

April 27, 1976, defendant stopped payment on the $27,593.55 check and reissued a check for $16,588.30 to Cohen (Exhibit B). Cohen and plaintiff refused to accept the second check because of the $5,422.20 deduction and because Exhibits B and C contained language of payment in full and cashing the check might result in an estoppel.

The $16,588.30 check has not been paid and plaintiff claims that amount against defendant plus $5,422.20 deducted therefrom.

The note provided that interest became due on any delinquent payment at the rate of 13 percent per annum from the respective due dates until the

date of payment. Up until January 23, 1978, plaintiff asserts $6,730.22 delinquent interest became due and will continue to run at 13 percent until payment is made (Exhibits 6 and 7). This is figured on the basis that the $16,588.30 payment was not timely paid and all later installments could first be applied to liquidate the amounts covered by the uncashed $16,588.30 check for which the 13 percent interest rate was charged for the late payment.

Article 17 of the mortgage provides that the failure to make any interest and/or principal payment when due constitutes a default on the mortgage (Exhibit 5). Upon default Article 16 of the mortgage provides that the mortgagor is to pay on demand to the mortgagee "its costs, expenses and reasonable attorney's fees in connection with the curing of any default" or of any suit or proceeding. If such amounts are not paid, they are to be included as part of the secured obligation and bear interest at the default rate from the date of expenditure.

Plaintiff asserts the incurring of $9,233.50 in counsel fees to cure the default and $112.45 in costs and expenses (Exhibit 11).

## THE LAW

This case is brought under the Uniform Declaratory Judgment Act, Act of June 18, 1923, P.L. 840, as amended, 12 P.S. §836, which provides that declaratory judgment is an appropriate remedy if there is (1) an actual controversy between contending parties or (2) where the court is satisfied that antagonistic claims are present between the parties which indicate imminent and inevitable litigation or (3) where a party asserts a right which is challenged by an adversary party and the court is satisfied that a declaratory decree will serve to terminate the uncertainty or controversy giving rise to the

proceeding: Mid-Centre County Authority v. Township of Boggs, 384 A. 2d 1008, 1010.

Defendant's brief argues other statutory remedies are available to plaintiff such as foreclosure. Defendant should have preliminarily objected in proper fashion to the appropriateness of the within action and may not now after trial raise such objection for the first time. Even if the objection were properly made, it is clear plaintiff does not seek foreclosure but rather the amount due on the mortgage and note as well as the resolution of the dispute as to counsel fees, the stand-by fee, the proper tender of documents and present and future acts of the parties.

Defendant also asks that the now-tried matter be tried before a jury. This request was previously made to the Honorable Raymond L. Scheib who denied the motion. No exceptions were taken to this order and defendant cannot raise this issue again.

In determining how much is due plaintiff, the court must decide first whether defendant's set-offs against the mortgage payment for "excess" counsel fees and interest on the detained stand-by fee were proper.

The court must also decide if the counterclaim for re-payment of the extension fee of $2,892.50 is proper.

A mortgagor may counterclaim for or set off liquidated demands due him against the mortgagee or its assignee: Carmalt v. Post, 8 Watts 406, 1839; Fisher Motor Company v. Reppert, 20 Berks 214, 1927; Green v. Cipolla, 8 Chester 44, 1957.

Without respect to the "excess" counsel fees claimed by defendant as a set-off, these had been paid by defendant at the time of the closing November 7, 1975, (Exhibit 12) without protest or condition and after Cohen's counsel had reduced the fee from

$6,500 plus expenses to $6,000 including expenses.

Defendant indicated by his payment at the closing of counsel fees exceeding the amount it now asserts is correct (one-fourth of one percent of the loan amount or $2,725) its acceptance of the higher amount requested and a withdrawal of defendant's counteroffer for lower fees which counteroffer had been rejected before. The time for protest by defendant was at the closing and it could not complain later that it had agreed to a higher fee. Its payment was an acceptance of an offer to go along with the terms of the original contract.

Nor can defendant extract interest for detention of the stand-by fee which was detained by reason of defendant's own failure to furnish necessary documents. The detention of the fund was necessary to enforce defendant's compliance with his agreement and it was within defendant's power to shorten the detention period. Plaintiff cannot be penalized for the proper act of its assignee in withholding the detention money.

Thus, plaintiff is entitled to recover the full amount of the balance due sought in this action and judgment will be entered for $16,588.30 (the amount of the uncashed check) plus $5,422.20 (the amount of the improper deductions taken as a credit by defendant) or a total of $22,010.50 in favor of plaintiff against defendant.

The court must also determine if the proved attorney's fee of $9,223.50 for collection is reasonable. Expenses are set at $112.45. Stipulations for the payment of attorney's fees and expenses are subject to the equitable control of the court and will be enforced to compensate plaintiff for the reasonable and necessary expenses of collection: Lewis v. Germania Savings Bank 96 Pa. 86, 1880; Scott v. Carl, 26 Pa. Superior Ct. 460, 1904.

Page 5 of the note provides for attorney's fees for collection of not less than five percent of the balance due. In the instant case counsel has indicated some 137.3 hours spent in collecting the present claim. The fee sought of $9,233.50 is reasonable in the light of the work performed, the expertise and experience of counsel and the hours expended. As related to the $22,010.50 balance due plus interest at 13 percent for two and one-half years the court finds fees equal to about one-third the fund to be recovered and in this respect the court finds them inflated. The court will allow $7,233.50 in counsel fees to be apportioned $5,793.50 for Townsend, Elliot and Munson and $1,440 for McCrady, Kreimer, Ravick and Bonistalli. Such expenses and reasonable fees are allowed under Article 16 of the mortgage in case of a default for its curing or a suit or proceeding to cure the default. The court is balancing the long hours given by counsel against the stated fee of not less than five percent.

Another issue to be resolved as to the merits of this case is whether plaintiff may recover interest at the 13 percent default rate or at the ten and one-half percent rate provided for regular mortgage payments. The default rate could be collected on the unpaid balance.

Defendant asserts no notice was ever given it as to the missed payments and thus contends default interest may not be collected. It also argues plaintiff could have cashed the unrestricted check for $16,588.30 to mitigate interest on the default.

However, the $16,588.30 unrestricted check dated April 27, 1976, had been accompanied by a letter indicating payment was being made in full of the unpaid mortgage balance minus credits. Plaintiff clearly might have been estopped from asserting partial payment had it cashed this second check.

(At this time this amount is admittedly due plaintiff.) The crediting by plaintiff of subsequent payments to the unpaid March and April, 1976, balance was written notice to defendant that plaintiff found defendant in default and it is proper for plaintiff to recover interest at the default rate of 13 percent. As of January 23, 1978, default interest amounted to $6,730.22 and will run at 13 percent per annum thereafter until payment is made.

Judgment will be entered for plaintiff and against defendant for the $22,010.50 balance due on the mortgage with interest at 13 percent liquidated as of January 23, 1978, at $6,730.22 and with additional interest thereafter at 13 percent per year until the balance is paid; judgment will also be entered in favor of plaintiff and against defendant for counsel fees in the amount of $7,233.50 and expenses in the amount of $112.45.

Defendant's counterclaim for the extension fee of $2,892.50 will be denied.