June Term, 1860.

FISK
v.
TANK et al.

12  276
84  647
12  276
90  606
12  276
98  353
12  276
a106  289
12  276
109  245
12  276
112  9473
12  276
54 LRA 721n

## FISK vs. TANK and another.

In an action for breach of a contract to make and set up on a steam boat, engines, &c., suitable for propelling the same, averments in the complaint that the defendants failed to complete the work by the time specified in the contract, by reason of which the plaintiff was deprived of the earnings of the boat during the period of such delay, and that upon trial the engines, &c., proved unsuitable and defective, by reason of which the plaintiff was compelled to expend large sums in repairs and was deprived of the use of said boat while making the same, and finally was obliged to remove said engines from the boat, and purchase and put in new ones at a large expense, and lost the earnings of said boat during the time necessary to make such change, and lost also the wages of officers and hands employed on the boat during the time so spent in making repairs and changes, are not statements of several distinct causes of action, or of separate demands upon different contracts, but of several breaches of one contract, and the plaintiff may at the trial give evidence concerning any or all of them.

In an action on such a contract, the complaint failed to describe the contract truly, by omitting a stipulation therein that if the work should in any manner fail to answer the purposes intended, or prove defective on a trial of twenty days under an engineer approved by one of the defendants, it was to be made good by repairs of defects: *Held*, that under the present system of

pleading and practice, the variance was properly regarded as immaterial, it appearing that a copy of the contract as proved was served upon the defendants' attorney some months before the trial, so that he could not have been misled or taken by surprise.

Where a complaint alleges that defendants are partners, and they fail, within the time allowed by law for an answer, to deny by affidavit the existence of the partnership, in accordance with the statute (sec. 98, chap. 137, Stat. 1858), they must be deemed to have admitted it.

A deposition should not be suppressed or excluded for want of a venue, or statement of the place where it was taken, either in its caption or in the certificate of the commissioner before whom it was taken.

It is no objection to a deposition, that it was reduced to writing by the deponent instead of the commissioner before whom it was taken.

A copy of a contract between a deponent and one of the parties to the suit, annexed to the deposition as an exhibit, is not admissible in evidence against such party, unless the non-production of the original is sufficiently accounted for; but the exhibit may be rejected and the testimony of the witness as to other matters be received.

It is a general rule, that depositions reduced to writing by the deponent, or by a party to the suit or some third person, in advance of the examination before the proper officer, or copied from such previously written statement, must be rejected; but where the deponent is a party defendant to a suit, with the fact of partnership between him and the other defendant admitted by the pleadings, a paper signed by him and annexed to his deposition as containing a correct statement of a verbal contract made between such partnership and the plaintiff, may properly be received in evidence as an admission in writing by one of the partners, of the terms of such contract, although it appear that such paper was written by the plaintiff and sent to the witness, before his examination; that fact, at most, only going to the credit of the witness.

In executory contracts to furnish articles for a specific purpose, especially by manufacturers, there is an implied warranty that the articles delivered shall answer the purpose for which they were designed.

In case of a warranty, direct or implied, where the article purchased proves defective or unfit for the use intended, the purchaser may, without returning it or offering to return it, and without notifying the vendor of its defects, bring his action for the recovery of damages; or if sued for the price may set up and have such damages allowed to him, by way of recoupment, from the sum stipulated to be paid.

The dictum in *Getty vs. Rountree*, 2 Chandler, 28, that where there is a warranty, but no fraud, the vendee is not entitled, against the will of the vendor, to return the article and recover back the price paid, and that in such case his only remedy is by suit for damages, or by recoupment, in case he is sued for the purchase money, is commented upon in this case.

Where a contract to furnish and put up engines suitable for a certain boat, contained a stipulation, that if the work should prove defective or fail, on a trial of twenty days, to answer the purposes intended, it should be made good by repairs of defects, the right of the purchaser to recover damages on account of such defects does not depend upon his returning, or offering to return the articles furnished.

Under such a contract the right of the vendor or manufacturer to repair the defects, was limited to such defects as disclosed themselves within the twenty days allowed for such trial.

Where the plaintiff in a suit on such contract, offers proof tending to show that when the machinery was put in operation, it did not answer the purposes for which it was intended, the defendants have a right to meet that proof by evidence that it was the weakness of the boat, and not their defective or unskillful workmanship, which caused the failure in the operation of the machinery.

A stipulation in such contract to furnish "machinery adapted to, and suitable for the boat, and that would drive her from 12 to 15 miles per hour," does not import any warranty, by the vendors, of the strength and capacity of the boat to endure the weight, shocks and friction of the machinery when in motion, but an obligation only to furnish machinery adequate to run a boat of such size and dimensions at the proposed speed, the purchaser taking the risk whether the boat is sufficiently strong for such machinery.

If the machinery furnished under such contract was not delivered as soon as the contract required, and then proved defective and inadequate for the purpose, after the trial provided for in the agreement, and the vendors refused to make the repairs necessary to adapt the machinery to the purpose intended, the rule of damages is the difference in value between the machinery furnished and that called for by the contract, adding thereto the expenses which the defendant has actually incurred in his business as a *consequence* of the failure of the defendants to perform their contract, which would include the wages and board of the officers and crew for the time they necessarily remained idle during the delay in furnishing the machinery, and during the time lost by breakages while testing the same, and during such reasonable time as was required for repairing it, or for procuring new and suitable machinery in its stead, if necessary, to which also may be added interest.

APPEAL from the Circuit Court for *Brown* County.

The complaint alleged, that on the 15th of May, 1855, the defendants, *Tank* and *Verbeck*, were partners, under the name of the "Howard Foundry," and in that name, in consideration of $5,300, to be paid, one-fourth as defendants should require it during the progress of the work thereinafter named, one-fourth after the same was duly completed, tried and approved by the plaintiff, and the balance in three and six months thereafter, agreed with the plaintiff to construct and set up on the steamboat, "Fannie Fisk," two steam engines and boiler, with shafts, smoke pipe, pump and all the usual fixtures and appurtenances, of sufficient power to propel said boat on the waters of Green Bay and Fox River, from twelve to fifteen miles per hour, and to be in

all respects suitable for propelling said boat on said waters, for which the same was expressly designed and built by the plaintiff, and to have the same completed and ready for use on the 1st day of August of that year; that the plaintiff had performed all things which, by said agreement he was required to do ; yet the defendants had failed to comply with their agreement, and did not get said engines, &c., ready for trial until the 18th of April, 1856, by reason of which the plaintiff was deprived of the earnings of said boat from the 1st of August, 1855, until that date, which would have exceeded $3,000; that upon trial said engines proved so unsuited to the purpose for which they were intended, by reason of their unskillful design and construction, that the plaintiff was obliged to expend $1,000 in repairs thereof, and for more than forty days, between said 18th of April, and the 15th of July ensuing, was deprived of the earnings which he would otherwise have derived from the use of said boat, exceeding $1,000; and on said last mentioned day, was obliged to lay up said boat, remove said engines therefrom, and expend $3,000 in purchasing and setting up new engines for the same, and $1,000 in necessary alterations in said boat, occasioned by the change of said engines, and for the space of forty-nine days necessarily consumed in procuring and setting up such new engines, was deprived of the earnings which he ought to have derived from the use of said boat, amounting to over $1,224; that the pump placed in said boat by the defendants, was utterly worthless to the plaintiff, and before he could use the boat, he was obliged to place a new steam engine and pump therein, at an expense of over $250; that the plaintiff, relying upon the agreement of the defendants, employed officers and hands upon said boat, and was obliged to pay them during the time it was thus unemployed, for wages and board, over $1,000; wherefore he demanded judgment for said several sums, with interest.

The answer of the defendant *Tank*, denies that he was at any time a partner in trade with said *Verbeck;* but alleges that in September, 1854, he leased the said "Howard Foundry" to said *Verbeck*, who then took possession thereof, and commenced doing the business of a machinist and en-

gine builder therein, and that the promises in the complaint mentioned, if made, were made by said *Verbeck* alone, and not jointly with said *Tank*. The defendant, for further answer, alleges upon information, that said *Verbeck* did agree to construct and set up in said steamboat, "Fannie Fisk," two vertical steam engines, with their boiler, &c., of sufficient power for a boat of its size and tonnage, and that the same were ordered by the plaintiff for that boat, and were intended by him to be used in propelling it on the waters of Green Bay and Fox River, but denies that *Verbeck* undertook to construct said engines, &c., of sufficient power to propel said boat on said waters, from twelve to fifteen miles per hour, and denies that *Verbeck* undertook that said engines, &c., should be suitable for propelling said boat in said waters, but, on the contrary, avers that said *Verbeck's* undertaking was to construct and set up engines, &c., of sufficient power to propel said boat with the usual rate of speed on said waters, and that the same were to be in all respects suitable for propelling said boat on said waters, provided the hull of said boat was sufficiently strong to bear the weight, power and friction of said engines and other machinery.

The answer further states, that about the 10th day of August, 1855, the plaintiff, for a sufficient consideration, agreed with *Verbeck* to extend the time for the completion of said engines, &c., until the same could be completed by reasonable diligence ; that by a further change of the agreement with *Verbeck*, the plaintiff furnished the boiler for said boat, at a cost of $2,284, at his own risk; that *Verbeck* caused said engines, &c., to be completed, and set up on said boat, on the 17th day of December, 1855, which was as soon as the same could reasonably be done ; that said boat then made her trial trip on the waters of Green Bay and Fox River; that said engines, &c., were then accepted by the plaintiff; that said boat continued to run on said waters until the close of navigation of that year, and was then laid up for the winter ; that at the opening of navigation in the spring, said engines, &c., underwent the usual repairs in such cases required ; that said boat began to run her regular trips about the 3d of April, 1856, and continued to do so until about

the 26th of that month, when, by reason of the straining and shaking of the hull of said boat, the entablature of said engines became broken while said boat was running upon Green Bay; that said boat was then repaired, and a new entablature placed therein, with additional braces and bands for the support of said engines, &c.; that said repairs were completed about the 13th of May, 1856, from which time until the 15th of July ensuing, said boat ran her regular trips, during all which time said engines, &c., continued in good order; and that the defendant was not notified by the plaintiff, on or before the said 15th day of July, of any break or defect in said engines, &c., or of the intention of the plaintiff to have the same removed from said boat. The answer further avers, that the hull of said boat was built in the year 1850, solely for river navigation, and was wholly unfit for the navigation of Green Bay; that the engines, &c., furnished for said boat by *Verbeck*, were constructed and put up in a workmanlike manner, according to his contract; that the same were sufficient to propel said boat, or any boat of equal size and tonnage, through the waters of Green Bay about twelve miles per hour; and that any failure to make that speed, and all the injuries which said engines, &c., sustained, did not result from any defect in the construction or setting up of the same, but were solely caused by the want of strength in the hull of said boat, to bear their weight, pressure and friction while navigating the waters of Green Bay; for which reason only the plaintiff caused said engines, &c., to be removed from said boat. The answer also denied all the allegations of the complaint not specifically admitted, and averred that there was yet due and unpaid of the said $5,300, the sum of $900, which said *Verbeck* had assigned to the defendant *Tank*, and for which he demanded judgment. Neither the complaint nor answer was verified.

After the jury had been empannelled, the defendant moved that the plaintiff be compelled to elect which of the claims mentioned in the "first cause of action" stated in the complaint, he would rely upon, which motion was denied by the court, and exception duly taken.

The plaintiff offered in evidence a deposition of the de-

fendant *Verbeck*, taken under a commission issued out of the circuit court for Brown county and directed to Henry H. Bostwick, a commissioner for the state of Wisconsin, residing in the city of Auburn, N. Y. The caption of the deposition was as follows: "Brown County Circuit Court. Answers made by *Guido F. Verbeck*, of the city of Auburn, in the state of New York, a witness sworn and examined, under and by virtue of the annexed commission, before Henry H. Bostwick, residing in the city aforesaid, the commissioner therein named, in a certain cause now pending, &c;" and the certificate of the commissioner was in the following words: " I do hereby certify that the foregoing answers were made by *Guido F. Verbeck*, after being first duly sworn according to law, to the several interrogatories, cross-interrogatories, &c., in this commission, as therein set forth, and that the same was this day done before me in accordance with the requirements of said commission.

H. H. BOSTWICK, Commissioner.

" Auburn, Sept., 25th, 1858."

The witness, in answer to interrogatories by the plaintiff, referred to several papers as annexed to his deposition and marked respectively, A, B and C. The paper marked A, was in the handwriting of the witness, being the estimate referred to in the first clause of the agreement set forth in the paper marked C. B was a copy in the handwriting of the witness, of contracts alleged to have been entered into between *Tank* and *Verbeck*, on the 26th of September, 1854. These contracts were: 1st. A lease from *Tank* to *Verbeck*, of the Howard Foundry for the term of one year, *Verbeck* agreeing to carry on the business to his best ability, and to pay interest at seven per cent. for the capital invested. 2d. An agreement purporting to be be signed by said *Tank* and *Verbeck*, in which, after referring to said lease, it is said, "We have the following understanding, which we will faithfully keep: the interest on the whole capital being heavy, the first party (*Tank*) promises not to count this against the second party, (*Verbeck*,) if the business not proves to be able to pay it after the second party has counted one and a half dollars a day for his services; if it however does well

and can pay the interest out of the profits, *G. Verbeck* shall next count himself three dollars per day, and what may be over shall be equally divided."

The paper marked C was as follows: "Memorandum of verbal contract entered into and made on the part of *Guido F. Verbeck* on the part of the Howard Foundry, and *Joel S. Fisk*, in the month of May, 1855. First. Said *Fisk* applied to said *Verbeck* for an *estimate* for what he would set up in the steamboat called Fannie Fisk, an engine, boiler, &c., upon which said *Verbeck* presented the following estimate of cost of a steam engine, boiler, &c.: [here follows a description of them;] engine, boiler, shaft, &c., complete, to be put up on board the boat in running order, at the foundry dock, for $4,500, payable one fourth down, one fourth twenty days after running, one fourth in three months after second payment, and one fourth six months after second payment. Second. That said *Verbeck*, after presenting the foregoing copy of proposition to said *Fisk*, proposed to put into said boat a different kind of machinery, viz., two perpendicular engines of 16 in. bore and 30 in. stroke, for an additional sum of $800, making $5,300 for all complete. Said *Fisk* replied that he knew nothing about steamboats or engines; that there was the boat, and all he wanted was machinery adapted to and suitable for the boat, and that would drive her from 12 to 15 miles an hour, but would be satisfied with 12 miles regular speed; that the payment of 1-4 down was changed, to be paid as should be drawn for by said *Verbeck*, at Howard Foundry, in merchandise and cash, as wanted, as the work progressed. Third. That said *Verbeck* agreed, on the part of the Howard Foundry, to make, furnish and put into the steamer Fannie Fisk, the machinery, &c., proposed by him, for the sum of $5,300, and to be completed by the first of August, 1855, to answer all the purposes desired by said *Fisk*, payments as before stated; and should the work in any manner prove defective or fail, on a trial of 20 days under an engineer of *Verbeck's* approval or furnishing, to answer the purposes intended, it was to be made good by repairs of defects. Fourth. In the plan and construction of the machinery put into the steamer Fannie by me, on account of

Howard Foundry, said *Fisk* never gave any orders or directions, but left it entirely to my judgment, he being satisfied if answering the undertaking. The above and foregoing is substantially the verbal agreement made by me on the part of Howard Foundry with *J. S. Fisk.*

Auburn, Dec. 22, 1857. (Signed,) GÚIDO F. VERBECK."

This paper, the witness testified, was in the handwriting of the plaintiff *Fisk*, except the signature, which was his own; that the paper had been presented to him by *Fisk*, and he had signed it to show what the verbal contract was in relation to the engines and machinery.,

The defendant *Tank* objected to the admission of said deposition in evidence, 1. Because there is no venue to the deposition. 2. Because the deposition does not state where it was taken. 3. Because witness could not be indicted for perjury. 4. Because deposition is in hand-writing of witness. 5. Because interrogatories are not propounded to the witness by the commissioner. 6. Because part of the deposition is in the hand-writing of the plaintiff *Fisk.* 7. Because copies are attached to the deposition, while the originals are unaccounted for. The court overruled the objections, the defendant excepting, and the deposition, including the exhibits, was read in evidence.

The defendant's counsel objected to the interrogatories propounded by the plaintiff in relation to the several papers marked A, B and C, and to the introduction of those papers in evidence, on the ground that they were immaterial and irrelevant. Against the admission of the paper marked C, they urged that it was not executed by any of the parties to the contract involved in this suit; that it was not the contract made between *Fisk* and *Verbeck* or the Howard Foundry; and that said paper was drawn up upon the part of the plaintiff, in this state, and forwarded to the witness, for the purpose of making evidence against the defendant *Tank*, and in favor of the plaintiff. But the court overruled the objections, and the defendant excepted.

The deposition of *Verbeck*, so far as it is deemed necessary to state it here, was, that from the 26th of September, 1854, until about the 20th of July, 1855, he was engaged in the

June Term, 1860.

FISK
v.
TANK et al.

Howard Foundry as lessee and partner of *Tank*, under the firm name of the Howard Foundry; that the paper produced by him, marked C, is a full and true statement of the contract under which said engines were furnished; that *Fisk* had paid over $4,500 on the contract, and pretty nearly the amount agreed upon; that he, *Verbeck*, proposed the change from a horizontal engine to two vertical engines; that he had opportunity to examine the boat before constructing said engines; that the bulkheads were taken out and keelsons put in, and the sides of the boat planked in arches, and hog-chains placed under the deck, by his advice, to fit the boat for vertical instead of horizontal engines; that the machinery was completed and set up in the boat so as to be ready for a trial trip, about the 15th of November, 1855, and finally completed ready for running, about the 19th or 20th of April, 1856; that the next day after the delivery of the boat, he left Green Bay, and has been absent ever since; that *Fisk* gave no orders or directions as to the manner in which the engines should be constructed; that the time for the second payment was fixed at twenty days after delivery, in order to give time for trial of the machinery; that the trial of said machinery was made under John Longworth, an engineer recommended by him; that the trial trip was made in November, 1855; that the plaintiff received the boat and machinery from his hands about the 20th of April, 1856; that the witness did guarantee that the engines should be suitable for said boat, no mention being made in the contract of the strength of the boat; that he did not agree to take on himself any responsibility as to the fitness of said boat, in point of strength, to bear the working of said engines; that said engines were properly constructed, so far as he had any personal knowledge; that they were manufactured in a good, workmanlike manner, and were intended to be suitable for said boat, and that the plaintiff did not accept the engines, or express any dissatisfaction with them, on the trial trip.

The plaintiff also introduced proof that after the boat was delivered to him for use in April, 1856, breaks occurred in the machinery so often that between that time and the 15th

of July following the boat was laid up between thirty-five and forty days for repairs; and on the day last mentioned the engineer, John Longworth, refused to run it any longer, and it was laid up and the engines taken out. Proof was introduced on the one side to show that the breakage of the machinery was owing to defects in its design or construction, or in the mode of setting it up, and on the other side to show that it was owing to the defective construction of the boat and its want of strength to bear the weight, &c., of the machinery necessary to propel it, at the rate of speed required, in the waters of Green Bay. As tending to prove the latter it was shown that the hull of the boat was built for the purpose of navigating Fox River and not for the navigation of Green Bay. Some evidence was also given for the purpose of showing that *Verbeck* caused some alterations to be made in the boat to fit it for vertical engines, which alterations it was contended reduced its strength. It was proved that after the plaintiff removed the vertical engines from the boat, he procured from New York, in their stead, a pair of horizontal engines, at a cost of about $3,000, including freight and travelling expenses of himself and his engineer, and the expense of setting up the new engines and of preparing the boat to receive them. It appeared, also, that the new engines were of one-third or one-fourth more power than those removed; and some evidence was given tending to show that when they were put in, some alterations were made in the boat, so as to increase its strength. There was also some proof tending to show that the engines built by *Verbeck* were of sufficient *power* to propel a boat of the size, &c., of the "Fannie Fisk" through the waters of Green Bay at the rate of speed required by the contract, provided such boat were strong enough to sustain the weight and pressure of the machinery. Some evidence was adduced for the purpose of showing that the first engines might have been secured in the boat in a different manner, at a moderate expense, so as to obviate the danger of breakage, and some evidence also upon the question whether, according to the common usage and course of business, it was the province of the machinist or of the employer or his ship carpenter to determine the strength

of the boat and its sufficiency for the machinery to be placed therein. It was also in proof that a portion of the machinery furnished by the Howard Foundry was still left in the boat and used in connection with the new engines, to wit, the boiler, smoke pipes, stay-rods, flanges, pillow-blocks, excentrics, connecting rods, steam pipe, and perhaps some other parts. There was also proof that in June, 1856, (before the vertical engines were taken out), the captain of the boat, in the absence of *Fisk*, applied to *Tank* to make some repairs of the machinery, and he at first replied that he would make no more repairs upon the boat unless *Fisk* would pay for them, but afterwards, on the same day, promised to make the repairs without charge. The plaintiff *Fisk* testified in regard to the repairs of the machinery, in substance as follows: "About the latter part of June, 1856, I went to *Tank* to see if I could get the machinery repaired. He complained that he had lost a good deal in building it and that I still owed him a balance upon it, and said he would not throw away any more in work upon it, nor allow anything more done in the foundry for the boat unless I would pay the bill every night. I asked him if he would allow the foreman to make the repairs I wanted *then*, if I would pay the bill, and he assented and set the men at work. At that time I insisted on his making repairs without cost to me, and he insisted that the engines had been delivered and that he was not liable to make the repairs; that the engines were built by *Verbeck*, and he had nothing to do with the contract and had lost enough by it. I don't think I told *Mr. Tank* I should return the machinery to him, nor that I should return it to the Howard Foundry. I told him if he would not make the machinery work, I should have to throw it out, and claim damages from him." *Fisk* also testified that *Tank* had presented to him a bill for repairs to the machinery, made between the 18th of April and the 12th of July, 1856, amounting to $631 63, and added: "I have not distinctly paid him. I have accounts against him. Have not paid the balance claimed on the machinery; have always claimed there was no balance." In reference to the offer to return the old engines, *Mr. Fisk* testified: "I had repeated con-

versations with *Tank* between the time of putting in the new engines and the commencement of this suit. I told him that he could send and get the engines, for they were of no use to me; that I thought he could fit them up and make them answer for stationary purposes, to sell them. I have always held the engines subject to *Mr. Tank*; always supposed he would take them. The last time I made this offer it was made in writing, and accompanied by a demand for $3,000, as a settlement." There was also proof showing that during the delays caused by the breaking of the machinery, and during the time spent in procuring and setting up the new engines, the officers and crew of the boat were under pay, and showing the amount of wages paid to them by the plaintiff during such delays.

At the time the testimony on the part of the plaintiff was closed, the counsel for the defendant *Tank* moved for a judgment of non-suit, which motion was overruled and exception duly taken. The reasons assigned for the motion, being stated at length in the argument of counsel in this court as reported, are here omitted. When the testimony on both sides was closed, the defendant's counsel asked the court to instruct the jury as follows:

1. That the plaintiff is bound by his own proofs, and if such proofs disclose a contract which does not establish a partnership between the defendants, *Tank* is not liable to the plaintiff for any damages in this case.

2. That in that case there can be no partnership between the defendants, without either a positive and unconditional agreement to divide the profits of the business, or an actual division and enjoyment of such profits by and between the parties, and this the plaintiff is bound to prove.

3. That the lease and agreement referred to in the deposition of *Guido F. Verbeck* does not establish a partnership between the defendants, unless the jury find that at some time during the continuance of the lease and agreement, there was an actual communion or division of the profits of the business of the foundry between the defendants.

4. That the mere statement in the deposition of the defendant *Verbeck*, that he was a partner, or "a lessee and part-

June Term, 1860.

FISK
v.
TANK et al.

ner" with *Tank*, is no proof, if the contract mentioned and referred to in the deposition does not create such partnership, or unless there was an actual division of profit between the parties.

5. That if the contract proved shows that the defendants, or either of them, were to repair the defects in the engine, or if the contract proved shows that " should the work in any manner prove defective, or fail on a trial of twenty days, under an engineer of *Verbeck's* approval or furnishing, to answer the purposes intended, it was to be made good by repairs of defects," such a variance is material, and the plaintiff cannot recover in this action.

6. That the plaintiff is bound to prove that he has fulfilled and performed all the conditions of the contract on his part, and that without such proof the plaintiff cannot recover.

7. That if any part of the contract price for the engines in question remains unpaid, the contract is not *performed* by the plaintiff, and he cannot recover.

8. That if the jury find that the engines were accepted and reduced to use by the plaintiff, without notice that he would claim damages, such acceptance and use is a waiver of the plaintiff's right to claim damages for non-performance or mal-performance of the contract in this action.

9. That if the jury find that the plaintiff has paid the second installment of the contract price for the vertical engines, he must be deemed to have approved the work, and to have waived all right to claim damages resulting from defects in the machinery.

10. That if the jury find that the plaintiff has kept and retained any material part of the machinery manufactured by *Verbeck* and set up in the boat, he cannot recover in this action, the contract being entire.

11. That if the jury find that the defendants had no notice of the plaintiff's intention to take out the old engines and put in the new, between the time of *Mr. Fisk's* conversation with *Mr. Tank* (in which he told *Mr. Tank* that " if the old engines did not work, he would throw them out and get new ones," or words to that effect), and the time when the

plaintiff took out the first engines, and that the defendant had no opportunity of putting in such new engines, or other new machinery, *during that time*, the plaintiff cannot recover the cost of putting in the new engines or new machinery.

12. That if the jury find that the plaintiff did not return, or offer to return the old engines, or any material part of the machinery, to the defendants, he cannot recover in this action.

13. That if the jury find that the plaintiff did not return, or offer to return the engines set up in the boat by *Verbeck*, before he incorporated the parts of the first machinery into the new engines, the plaintiff cannot recover the cost of such new engines, or the expense of setting up the same in the boat.

14. That an offer to return those parts of the first machinery which were taken out of the boat by the plaintiff, would be too late after he had taken and incorporated the parts retained by him into the new machinery.

15. That mere notice given by the plaintiff to the defendants, that they could have the property, or any part of it, if they called for it, does not amount to an offer to return.

16. That if the jury find that the plaintiff told *Mr. Tank*, that if the machinery would not work he would throw it out and claim damages, he imposed upon himself the duty to notify *Mr. Tank* that the machinery had failed prior to his taking out such machinery, and if he failed so to notify *Tank*, he cannot recover the cost of putting in such new engines.

17. That if the jury find that the breaks in the machinery were caused by the weakness of the boat, or partly by the weakness of the boat, and partly by defects in the design or construction of the machinery, the plaintiff cannot recover any damages for such breaks, or any expenses incurred in consequence thereof.

18. That if the plaintiff employed the defendants to make and set up the engines in question in a boat which was unsuitable, or too weak to bear the working of such engines, the plaintiff is in fault.

19. That the plaintiff was bound to use ordinary care in

ascertaining and assuring himself of the sufficiency of the boat, before the engines were put in it, and before contracting for the machinery; and if he neglected to take this precaution, and the damages are in any measure attributable to such neglect on his part, he cannot recover any such damages from the defendants.

20. That if the jury have any doubts as to whether the fault is the plaintiff's or the defendants', with respect to any of the alleged injuries or claims, their verdict must be for the defendants, upon all claims thus doubtful.

21. It being proved and admitted that the new engines bought by the plaintiff are of one-third more power than the first engines, the defendants are entitled to a deduction of one-third of the price paid by the plaintiff for such engines, if the jury find the vertical engines were of sufficient power to propel the boat at the rate of speed required by the contract.

All of which instructions the court refused to give, and the defendant's counsel excepted.

The respondent's counsel asked the court to instruct the jury as follows:

1. That the plaintiff having alleged in his complaint that at the time he contracted with the Howard Foundry for the machinery for the steamboat Fannie Fisk, the defendants, *Tank* and *Verbeck*, were copartners, under the name, firm and style of the Howard Foundry, and that allegation not having been denied by the affidavit of the defendants or either of them, or by any one on their behalf, the jury must take that allegation of copartnership to be true, and must find that the defendants were copartners at the time stated in the complaint.

2. That if the jury find that the defendants were at the time of making the contract aforesaid, connected in business upon the terms of the agreements set forth in the deposition of the said *Verbeck*, those agreements constituted them copartners, at least as to persons contracting with the Howard Foundry, and the jury will so find.

3. If the jury shall find that the defendants were copartners as alleged in the complaint, then the defendant *Tank* is

liable upon the contract set forth in the complaint, to the same extent that the defendant *Verbeck* is.

4. If the jury should find that the defendants contracted with the plaintiff to make, construct, and set up in their proper places on the steamboat Fannie Fisk, the engines, boilers, smoke-pipe, shafts, pump, and all the usual and necessary fixtures and appurtenances for the same, of sufficient power and capacity to propel said steamboat in the waters of Green Bay and Fox River, at a speed of from twelve to fifteen miles per hour, and to be in all respects suitable and competent for working and propelling said steamboat on said waters; and should also find that the machinery furnished was not in all respects suitable and competent for working said boat on said waters, the defendants are equally liable for damages, whether the defects in said machinery arose from the faulty design or construction thereof, or from the defective manner of setting it up on board of said boat.

5. If the plaintiff ordered machinery of the defendants for a special purpose, and the defendants supplied and sold it for that purpose, the defendants are deemed in law to have warranted it to be fit for that purpose.

6. If it proved unsuited to the purpose for which it was ordered, or if any part of it was unsuited for that purpose, the plaintiff might either return, or offer to return, the whole property to the defendants, and thereupon recover the whole price paid for it, or he might retain such parts as were suited to the purpose for which the whole was ordered, and repair or supply such parts as were unsuitable for that purpose, and recover of the defendants the cost of repairing or supplying the defective parts.

7. If the jury shall find that one of the defendants was out of the country when any part of such machinery proved defective, and not in a situation to repair or supply the same, and that the other defendant refused to repair or supply the same, it was the right of the plaintiff to do so; and it was further his right to adopt the speediest and surest method of doing it which was known to him at the time.

8. If the jury should find that the defendants, in order to set up their engines, removed any of the timbers in said

boat, and thereby rendered her materially weaker, they are thereby estopped from showing that the failure of the machinery was owing to the weakness of the boat.

9. If the jury find that said boat was capable of sustaining horizontal engines of equal power with the engines furnished by the defendants, set up as horizontal engines usually are set up, they will find for the plaintiff, notwithstanding they may believe that the vertical engines furnished by the defendants were sufficient to propel said boat if they had been differently set up, or if said boat had been differently constructed.

10. If the jury shall find for the plaintiff, they will assess to him, for his damages, besides the money expended by him for repairs of the defective machinery, all such sums as the plaintiff paid to the crew of his boat for their wages during the time the machinery was being repaired; and may also assess interest on such sums from the time they were paid.

The court gave the jury all of said instructions and the defendant's counsel excepted.

Verdict for the plaintiff for $3,500. Motion for a new trial overruled, and defendant excepted. Judgment in accordance with the verdict, from which the defendant *Tank* appealed.

*John C. Neville* and *E. H. Ellis*, for appellant, in support of the objection taken to the deposition of *Verbeck*, on the ground that it is in the handwriting of the deponent, cited *Amory vs. Fellowes*, 5 Mass., 219; *Carmalt vs. Post*, 8 Watts, 406; *Bailis vs. Cochran*, 2 John., 417; *Armstrong vs. Burrow*, 6 Watts, 266. In support of the objection on the ground that part of said deposition is in the handwriting of the plaintiff, they cited *Clement vs. Hadlock*, 13 N. H., 185; *Amory vs. Fellows*, and *Carmalt vs. Post, supra;* 7 U. S. Dig., 225; 2 id., 212.

II. The evidence offered by the plaintiff to show that, in place of the old machinery, new machinery was obtained, at a cost of $3,000; that offered to show the delay of the boat in running, and the payment by the plaintiff of wages to hands, &c., from July 15th to September 2d; and that offered to show that the machinery was defective and unsuited

for a boat like the Fannie Fisk, should have been ruled out, 1. Because it was not preceded by any proof that the plaintiff ever returned or offered to return the machinery alleged to be defective. He was bound to place the defendants in as good a condition as he could before incurring any such expense, and to give them a fair opportunity to supply any defects. *Dewey vs. Erie*, 2 Harris, 213; *Frankenfield vs. Freyman*, 1 id., 56; *Freeman vs. Clute*, 3 Barb., 424. The contract also provided that they should supply any defects in the machinery. If they failed to do this, the plaintiff's only remedy was a return of the whole property, and a recovery of the amount paid by him to the defendants. 2. The sum expended for new machinery is no proper measure of the plaintiff's damages, especially when that new machinery did not, either in design or construction, conform to the specifications of his contract with the defendants, and the new engines were of one third more power than those built by *Verbeck*. Chitty on Con., 569, 741–3; *Freeman vs. Clute, supra; Sprague vs. Blake*, 20 Wend., 61. The plaintiff might have remedied the difficulties by setting up the first engines differently, and this, as the less expensive course, he was bound to adopt. Chitty on Con., 872; *Miller vs. Mar. Church*, 7 Greenl., 51.

III. The court erred in denying the defendant's motion for a non-suit. 1. The proof does not establish a partnership between the defendants. Stephens' Nisi Prius, 3, 2380; Coll. on Part., 23 and § 85; Story on Part., §§ 30–47. Having undertaken to show the actual arrangement existing between *Tank* and *Verbeck*, and this arrangement not constituting them partners, he cannot claim the benefit of the statute, which requires the defendants to deny the partnership by affidavit. 2. There is a material variance between the contract described in the complaint and that proved. 1 Greenl. Ev., §§ 63, 66, 68, 69; 2 Starkie on Ev., pt. 1, pp. 59, 60, and notes; *Ames vs. Ames*, 5 Wis., 160; 3 Wend., 374. 3. The plaintiff failed to prove full performance of the contract on his part, and it appears from his own showing that he has not paid the full contract price for the machinery in question. Chitty on Con., 736, 743. 4. The machinery was

accepted and reduced to use by the plaintiff without any sufficient notice that he would claim damages. He paid the second installment of the contract price and approved the work. *Sprague vs. Blake, Frankenfield vs. Freyman,* and *Dewey vs. Erie, supra;* Chitty on Con., 459-61; *Perley vs. Balch,* 23 Pick., 283. 5. The plaintiff still retains in his possession the whole machinery, and in his use a large portion of the machinery specified in the contract, and has never returned, or offered to return, the same. See cases cited under the previous point. 6. The plaintiff put new engines into the boat without notifying or consulting the defendants, thereby abandoning the contract and all rights under it. Cases in Wend. and Harris above cited. 7. The plaintiff has so confounded the measure of damages by his own acts in taking out the old and putting in the new engines, that they cannot be ascertained by the defendants. 2 Pars. on Con., 475-6; *Sprague vs. Blake, supra.*

IV. The court erred in refusing to give the jury the several instructions asked for by the defendants. In support of the instructions thus refused respectively, counsel cited authorities as follows: For the first, *Rice vs. Austin,* 17 Mass., 197; Story on Part., §§ 30-47. For the second, third and fourth; Story on Part., §§ 35-47; Coll. on Part., §§ 25-35; for the fifth, 1 Greenl. Ev. § § 63, 66, 68, 69; 2 Starkie on Ev., pt. 1, pp. 59, 60, and notes; *Ames vs. Ames, supra;* *Stone vs. Knowlton,* 3 Wend., 374; *Penny vs. Porter,* 2 East, 2; *Hatch vs. Adams,* 8 Cow., 35; for the sixth, Chitty on Con., 242-3; for the seventh, *Lawrence vs. Simons* 4 Barb., 354; for those numbered from eighth to sixteenth, cases above cited from 1 and 2 Harris and 20 Wend., with 2 Pars. on Con., 29-33, and notes; Chitty on Con., 458, 741-3, and notes; *Hills vs. Bannister,* 8 Cow., 31; 2 Kent's Comm., 480; for those numbered from seventeenth to twentieth, *Tonawanda R. R. Co. vs. Munger,* 5 Denio, 255; *R. R. Co. vs. Aspell,* 23 Penn. St., 147; *Brownell vs. Flagler,* 5 Hill, 282; *Brown vs. Maxwell,* 6 id., 592; *Hartfield vs. Roper,* 21 Wend. 616; *Spencer vs. Utica and S. R. R. Co.,* 5 Barb., 337; *Clark vs. U. and S. R. R. Co.,* 11 id., 112; *Haring's Adm'x vs. N. Y. & E. R. R.,* 13 id., 9; *Willett's Adm'rs vs. B. & R. R. R.,* 14

id., 585; *Laing vs. Colder*, 8 Barr, 482; *Kase vs. John*, 10 Watts, 107; and for the twenty-first, Chitty on Con., 569.

V. The court erred in directing the jury to include in the plaintiff's damages, interest on all the expenses incurred by him in the purchase of new machinery, &c., up to the time of the trial. The boat began to run after the new engines were put in, about the 2d of September. Thus the plaintiff would have the use of the machinery in the boat, and interest upon its cost at the same time. Besides, it is well settled that interest is not recoverable upon unliquidated damages.

*James H. Howe*, for respondent:

I. At the date of the contract made by *Fisk* and *Verbeck*, *Tank* and *Verbeck* were partners under the name of "Howard Foundry." 1. The complaint so avers, and there is no affidavit by either of the defendants to sustain their denial, as required by statute. R. S., 1849, p. 528; R. S., 1858, p. 815. 2. The contract proved between *Tank* and *Verbeck*, made them partners *quoad* third persons. Coll. on Part., 22–43, and cases there cited; Parsons on Con., 131–136.

II. The jury have found that a contract was entered into substantially as set forth in the complaint, and that the respondent performed all the conditions precedent required of him by that contract.

III. The contract being an executory one, to manufacture and deliver articles for a particular purpose, there was an implied warranty that the articles furnished were suited to the objects for which they were furnished. 1 Pars. on Con., 468; *Jones vs. Bright*, 15 E. C. L. R., 529; *Brown vs. Edington*, 40 id., 661; *Olivant vs. Bayley*, 5 Q. B., 288; *Laing vs. Fidgeon*, 1 E. C. L., 531; *King vs. Paddock*, 18 John., 141; *Howard vs. Hoey*, 23 Wend., 349; 8 Blackf., 317. The defendants warranted that the machinery which they were to furnish should be *suitable* for the purpose of propelling *this particular steamer*, "Fannie Fisk," *as she was* through the waters of Green Bay and Fox River, at the rate of 12 to 15 miles per hour, in her regular business of navigating those waters.

IV. The jury have found that the engines set up on the

boat by the "Howard Foundry," were *unsuited* to the boat—
were unskilfully designed and executed for the purposes intended. This precise question was left to them by the court
below in the fourth and sixth instructions given.

V. The machinery having thus proved insufficient, the plaintiff was at liberty either to return, or offer to return, the whole, and recover the whole price paid, or to retain such parts as were suited to the purpose, and repair or supply such parts as were unsuitable, and recover of the defendants the cost of such repairs, or of supplying the defective parts. 2 Smith's Leading Cases, p. 32, note; *Lyon vs. Bertram*, 20 How. (S. C.), 154; *Pateshall vs. Tranter*, 30 E. C. L., 39; *Voorhees vs. Earl*, 2 Hill, 288; *Dawson vs. Collis*, 70 E. C. L., 522; *Withers vs. Greene*, 9 How. (S. C.), 220–221. The right to return the property, on breach of warranty, in the absence of any express agreement to that effect, is denied in some of the cases. *Street vs. Blay*, 22 E. C. L., 122.

VI. One of the defendants being absent from the country and the other refusing to repair, it was the right of the plaintiff to adopt the speediest and surest method for repairing or supplying defective parts of the machinery, and to recover the cost of so doing. In the case of a sale of an article to be manufactured, the measure of damages for a breach of warranty is the amount required to make the article what it should have been. *Clifford vs. Richardson*, 18 Vt., 620; *Blanchard vs. Ely*, 21 Wend., 342; *Thompson vs. Shattuck*, 2 Met., 615; *King vs. Paddock*, and *Howard vs. Hoey, supra.* The main purpose of the contract was the erection, not of two vertical engines of a particular size and construction, but of engines *capable of producing a given result.* The defendants did not furnish them as they agreed; *Fisk* did furnish them. He now asks for compensation for so doing.

VII. The defendants, in setting up their engines, having removed a portion of the timbers, thereby making the boat materially weaker, were, upon that fact being found by the jury, estopped from showing that the failure of the machinery was owing to the weakness of the boat. The general rule is that when a party has been induced to act in a particular way by the statements or conduct of another, the lat-

ter will not be permitted to contradict such statements or conduct, when it would tend to the injury of the person so acting upon them.    1 C. &. H.'s notes to Phillips on Ev., 454–463 ; *Frost vs. Saratoga Ins. Co.*, 5 Denio, 154 ; *Hall vs. Fisher*, 9 Barb., 17 ; *Chautauque Co. Bank vs. White*, 6 Barb., 589 ; *Copeland vs. Copeland*, 28 Me., 525 ; 8 Wend., 481 ; 3 Hill, 215 ; 6 id., 534.    In this case, when the defendants put in their vertical engines, the keelsons (pieces of timber running across the bottom of the boat, longitudinally, to strengthen her) were cut down in the middle, by *Verbeck's* orders, from a thickness of 14 inches to one of 3 inches.    In reply to the position that the court should have let the evidence of the weakness of the boat go to the jury, counsel argued further, that *Verbeck* had ample opportunities to learn the true character of the boat before he commenced to put the engines in, and that his contract was to make engines suitable to the boat *as she was.*

VIII.    The facts last mentioned justified the court below in refusing to give the 17th, 18th and 19th instructions asked by the defendants.    This refusal is further justified by the fact that a false representation is nowhere set up in the answer, and was, therefore, not in issue.    Again, the proof does not show that the plaintiff ever told the appellant where the boat was to run.    The statement that the boat was designed and built by the plaintiff for the navigation of Green Bay is true.    The hull, indeed, was built years before this contract, but the hull is only a small part of the completed boat.    It was the finished article which the plaintiff designed for the bay trade.

IX.    The refusal to give the sixth instruction asked by the defendants, was not erroneous.    It has sometimes been held that before one can recover, on breach of contract, he must aver and prove the performance of conditions or covenants precedent on his part, but never the performance of *all* covenants or conditions.    2 Smith's Leading Cases, 24.

July 10.        *By the Court*, Dixon, C. J.    The appellant's application to the court to compel the respondent to elect upon which of the claims stated in his complaint he would proceed, and to

abandon the residue, was properly denied by the court. The complaint is not, as seems to have been supposed by the appellant's counsel, either double or multifarious. It does not contain a statement of several distinct causes of action improperly blended together, or of separate injuries to different chattels, or separate demands upon different contracts, as upon two or more promissory notes, or a note and book account, or the like, but it proceeds for damages for several breaches of one contract. It is obvious that in such a case, the plaintiff may, either at common law or under the code, in a single statement or count, allege as many breaches as he chooses, and when he comes to the trial be permitted to give evidence concerning any or all of them.

The deposition of the defendant *Verbeck* was properly admitted. The want of a venue or statement of the place where it was taken, either in its margin or the certificate of the commissioner before whom it was taken, does not invalidate it. It is said that without such statement perjury cannot be assigned upon it. The authorities cited by the respondent's counsel, clearly establish the contrary. They show that, upon a trial for perjury, when the venue is wrongly stated in the ₍affidavit or deposition, such written statement may be disproved, and the true place of administering the oath may be shown by parol testimony. Such recital is not so much a part of the deposition or affidavit as to make it conclusive, but is *prima facie* evidence merely. *A fortiori* the true place may be shown where there is no recital. *King vs. Emden*, 9 East, 437;ʹ *Rex vs. Spencer*, 1 Carr. & Payne, 260 (11 E. C. L., 384). For all ordinary purposes the place of taking sufficiently appears on the face of it and the accompanying papers. In this respect it is in strict compliance with the rule (61 old Rules) which requires the return to state the time when the testimony was taken; but makes no reference to the place where it was taken. The objection that the deposition was reduced to writing by the deponent, instead of the commissioner, is not supported by the authorities cited. They only establish what is alike consistent with reason and justice, that depositions to be admissible, must be taken in the regular course of judicial examination—that the witness

June Term,
1860.

FISK
v.
TANK et al.

must be first duly sworn, and the questions put to him, and that his answers orally given must be reduced to writing at the time of the examination—and that if they be not so taken on oath, but are reduced to writing in advance of such examination, by the deponent, the party or some third person, or are copied from such previously written statement, they must be rejected. We are not aware that it has been held by any court that the reduction to writing by the deponent, of his answers orally given, vitiates the deposition. On the other hand, two of the cases cited, *Carmalt vs. Post*, 8 Watts, 406, and *Clement vs. Hadlock*, 13 N. H., 185, expressly sanction it. We can see no objection to it. Some courts have even gone as far as to hold that it is no objection to the competency of a deposition, that it is in the handwriting of the party or his agent; that it will be presumed to have been so written in the presence and under the superintendence of the magistrate. *Ray vs. Walton*, 2 A. K. Marshall, 71. This is going much further than is necessary to sanction the admission in the present case, and further, perhaps, than we would feel warranted in going. Our legislature, in prescribing the method of taking depositions of witnesses within this state (sec. 16, chap. 98, Statutes of 1849; sec. 16, chap. 137, Statutes of 1858), seem to have laid down a wholesome rule upon the subject—*that they shall be written by the magistrate or by the deponent, or by some disinterested person in the presence and under the direction of the magistrate.*

The objection that a part of the deposition is in the handwriting of the respondent, is unfounded in fact. The exhibits or papers annexed, strictly speaking, form no part of the deposition. The deposition, that is, the oral testimony of the witness as taken and reduced to writing, may be admitted, and the exhibits, if there be any thing in their character which renders them incompetent, may be excluded. The exhibit marked " B," being a copy of the original contract, the non-production of which was not sufficiently accounted for, was improperly admitted. As to the other exhibits, there seems to have been some confusion of ideas, owing to the mixed relation of party and witness, in which

the deponent *Verbeck* stood to the action. As a mere witness, there can be no doubt that such statements, whether offered in the form of exhibits annexed to a deposition, or in some other manner, are inadmissible. But in his character of a party to the suit, with the fact of partnership between him and the defendant *Tank* not open to investigation, but admitted by the pleadings, they were properly received as admissions in writing of the nature and extent of the contract. For this purpose the admissibility of a paper signed by him is not affected by the fact of its having been written by the opposite party, and such circumstance would, at most, go only to the degree of credit to be given to it, according to the nature and circumstances of the transaction. For the rule as to admissions by partners, see Collyer on Partnership, § 423, and authorities there cited.

The appellant, by his failure, within the time prescribed by law for an answer, to deny, by affidavit, the existence of the partnership as alleged in the complaint, in accordance with the provisions of sec. 90, chap. 98, Statutes of 1849 (sec. 98, chap. 137, Statutes of 1858), must be deemed to have admitted it. The statute declares that, in the absence of such denial, such averments shall be taken to be true. This court (*Whitman vs. Wood*, 6 Wis., 676) has so decided; and agreeably to that decision it only remained for the respondent to prove the making of the contract by the firm.

The only other question material to be noticed before we come to the merits of the controversy, is that of variance, which was raised on the motion for a nonsuit. It consists in the pleader's omission to allege in the complaint a part of the contract by which it was agreed that if the work should in any manner fail to answer the purposes intended or prove defective, on a trial of twenty days, under an engineer of *Verbeck's* approval or furnishing, it was to be made good by repairs of defects. The contract, in all other respects, is stated truly. Under the system of pleading and practice which prevails at the common law, there can be little doubt that this failure to prove the contract as laid would be fatal. But under the system now established by law, more liberal as well as more just rules

obtain, and actions are not to be defeated by slight variances or imperfections in the pleadings. It is declared by statute, sec. 33, chap. 125, that "no variance between the allegation in a pleading and the proof, shall be deemed material, unless it shall actually mislead the adverse party to his prejudice in maintaining his action or defense upon its merits. Whenever it shall be alleged that the party has been so misled, that fact shall be proved to the satisfaction of the court, and in what respect he has been misled, and thereupon the court may order the pleading to be amended upon such terms as may be just." By the next section it is enacted that " when the variance is not material as provided in the last section, the court may direct the fact to be found in accordance with the evidence, or may order an immediate amendment without costs." It is not contended that the appellant was in any manner misled or taken by surprise. Indeed, the case shows that he could not have been, for it appears that a copy of the contract as proved, was served upon his attorney some months before the trial. It was then clearly a case of immaterial variance, which the court, under the section last quoted, might disregard, or order an immediate amendment without costs, in its discretion. It decided to pursue the former course, and over that decision we have no control.

Many of the principles applicable to the merits of this case, have been heretofore settled in this court, and it will, therefore, be unnecessay for us to consider them with reference to the adjudications of other states. In the case of *Getty et al. vs. Rountree et al*, 2 Chandler, 28, the following points were decided:

1. That in executory contracts to furnish articles for a specific purpose, especially by manufacturers, there is an implied warranty that the article delivered shall answer the purpose for which it was designed, inasmuch as the purchaser has not an opportunity of inspecting or testing it;

2. That in case of a warranty, direct or implied, where the article purchased proves defective or unfit for the use intended, the purchaser may, without returning or offering to return it, and without notifying the vendor of its defects,

June Term,
1860.

FISK
v.
TANK et al.

bring his action for the recovery of damages, or if sued for the price, may set up and have such damages allowed to him by way of recoupment from the sum stipulated to be paid.

These points were fairly raised, and, as we think, correctly decided. There was another point, however, not involved in the case, upon which the court attempted to rule, to which we do not wish to give our unqualified assent. It was said that where there is a warranty but no fraud, the vendee is not entitled, against the will of the vendor, to return the article and recover back the price paid; that in such case his only remedy is by suit for damages, or by recoupment, in case he is sued for the purchase money. As applied to the facts of that case, provided the court had been called upon to determine whether the defendants had the right, at the time the action was commenced, to return the pump about which the suit arose, such decision might have been correct. There is, however, much reason for saying, and many respectable authorities hold, in respect to executory contracts particularly, that in addition to the remedies above stated, the vendee may, in case the warranty be not complied with, altogether refuse to receive the article; or may take and keep it for such time only as may be necessary for a fair examination, and then return it on discovering its defects; in which case he is not considered as having received it at all; and in either case, if he has paid for the same, may sue for and recover back the price. See note to *Cutler vs. Powell*, 2 Smith's L. C., 5th ed., page 32, and cases there cited. Upon this point we wish to express no opinion. We desire merely to reserve it. It was entirely outside of the case then before the court, and is equally so now; and, therefore, could not be adjudicated in either. No return, or offer to return the article purchased was there made, and no rights thereupon claimed; and the same is true here. With this exception, the decision meets our entire approval. The opinion exhibits a clear understanding and just discrimination of the authorities, and renders an examination of them here, upon the points properly determined, entirely unnecessary. This disposes of a large number of exceptions taken by the appellant's counsel, not necessary to be enumerated here, which are founded

upon the supposed want of a return or offer of the machinery to the appellant, or of notice to him of its defects.

This case is not analagous to those cases, to some of which we have been referred, where, by the stipulations of the contract, or the course of dealing between the parties, the vendee is bound within a specified or reasonable time to return the property, with his dissent, or to keep it on the terms of the offer. In such transactions, the failure to return according to the terms of the agreement is an election to keep the property at the price agreed, and a waiver of all claim to damages on account of defects. Such was not the agreement between these parties. The sale in the first instance was absolute, provided the respondent chose so to consider it. His right to recover damages does not depend at all upon his returning or offering to return the articles purchased. If he could have done so, it would only have been necessary for the purpose of enabling him to recover back the purchase money paid and of relieving himself from future payments. He seeks neither of these things, but merely asks compensation for the losses sustained by a breach of the warranty.

There is another question with which the case seems to have been unnecessarily burdened, and from which we desire to relieve it as early as possible. It seems to have been supposed by both sides, that the respondent's right to recover depended in some way upon his neglect to call upon the defendants to make repairs, or their refusal to do so. With this idea proofs were offered, some of which were received and some rejected; instructions were asked, which were in part given and in part refused; and many exceptions were taken. If we rightly understand the contract, all these matters which had reference to the transactions between the parties *after* the expiration of twenty days from the time of the setting up and delivery of the machinery, were entirely foreign to the controversy. After this period the contract seems to have been treated as if it were still executory on the part of the defendants. This was clearly wrong. The terms of the agreement are too plain to be misunderstood. It was completely executed on the part of the defendants,

when the machinery was set up and delivered, except so far as they reserved the right to repair, if the work, upon trial in the manner specified, proved defective, the time for which was expressly limited to the period of twenty days. Without this stipulation the defendants would not have had the privilege of repairing, nor could the plaintiff have required it of them. The rights and obligations flowing from the stipulation were limited to defects discovered during the time fixed for the trial of the machinery. Thereafter the defendants were no more bound to repair the machinery than any stranger would have been, and the plaintiff was absolved from all duty of applying to them to do so, or giving them notice of its defects. If it then proved defective he was at liberty to get it repaired elsewhere, or not at all, as he pleased. He was not bound to repair it, or supply its place with other, in order to maintain his action. His right of action for damages in nowise depended upon his subsequent conduct, or that of the defendants, but accrued to him from a breach of the contract by the delivery of machinery the defects or unsuitableness of which had not been discovered and remedied in accordance with the stipulation.

In this connection it may also be well to notice two other principles of law sought to be applied to this case; the one that, in actions for injuries arising from the negligence and carelessness of another, the party seeking redress must be himself free from fault, and must not by his own want of care have contributed directly to the injury received; and the other, that a party who, by his declarations or conduct, has induced another to act in a particular manner, will not afterwards be permitted to deny the truth of the admission, if the consequence would be to work an injury to such person, commonly called an *estoppel in pais*. It appears to us that neither of these principles has any application to it. The former, as a substantive ground of defense, going to defeat the whole action, applies only to suits brought to recover damages occasioned by the negligent conduct of another, and does not apply to actions for a breach of contract like the present. The plaintiff seeks to recover damages by reason of the alleged failure of the defendants to set up and

deliver such machinery as the contract called for; and as a mode of establishing such failure, he offers proof tending to show that when it was put in operation in the manner contemplated by the parties, it did not answer the purposes for which it was intended. This was a means of proof—a knowledge of facts derived from actual experiments—and, under the circumstances, perhaps the best which the nature of the case admitted of. As experimental knowledge it was liable to be fully and fairly scrutinized and tested on the part of the defendants. They had the right to know and to show whether or not the trial to which the machinery was put was fair and proper. The conclusiveness of the experiments, and the weight to be given to the evidence, depended upon this. Therefore the defendants were entitled to prove, if they could, that it was the weakness of the boat or the negligence or want of skill of the plaintiff or his agents, and not their defective and unskillful workmanship, which caused the unsuccessful operation of the machinery. They were entitled to do this, not because such weakness, negligence or want of skill, if shown, would have operated to bar the whole action, notwithstanding it might still appear that the engines were not in all respects suitable or such as the defendants agreed to furnish, but because it was a legitimate method of meeting, explaining or rebutting the plaintiff's evidence and exhibiting before the court and jury the real facts of the case. The plaintiff was not bound to the defendants to use any degree of care or skill in the use of his boat or machinery, or in the management of his business. They were matters which did not concern them and about which he could suit himself. His conduct in these respects only became the proper subject of investigation on their part, when he undertook to make it the means of showing that they had violated their contract, and then they might lawfully scrutinize it for the sake of arriving at the truth. Suppose that, being possessed of, he had resorted to, other means of proof, by which he had indubitably shown that they had broken their contract, and that in consequence thereof he had suffered damage in the sum of $1,000, could they have shown as a matter of defense that his boat was weak and un-

fit to be navigated by steam, and that if the machinery had been such as he bargained for, it would therefore have been useless to him? Or that he had never put it to the uses for which it was intended? Or that he had used it in such a careless and improper manner that it had thereby become wholly worthless? We think not. We never before heard of such a defense to such an action. Suppose the purchaser of a horse, paying the full price of a good animal, with warranty of soundness, should, upon discovering that the horse was unsound and not worth one fourth the price paid, permit him through negligence to die upon his hands, could the seller, in an action against him to recover damages for a breach of the warranty, set up as a defense the purchaser's negligence and the subsequent death of the horse? Clearly, he could not. It is needless to pursue this matter further; we think our views must be already understood.

The doctrine of *estoppel in pais* seems equally remote. If it can be applied to any of the acts of the defendants here, by which they were guilty of a breach of their contract, we do not see why it is not equally applicable to every other case of a violated agreement. Equity and good conscience, no doubt, require that every man should faithfully and honestly perform his promises, but his neglect to do so will not shut him out from a full and fair investigation of the facts upon which his alleged non-performance is founded, or deprive him of the benefit of any legal testimony which he may adduce, showing or tending to show that he has fulfilled. Estoppels are sustained because it is against conscience to allow the party to assert to the contrary of what he has before said or done; but is it against conscience to give a party, prosecuted for the non-fulfillment of his engagement, a complete hearing in a court of justice? We are not of that opinion. To say that he is estopped in such a case is to assume the whole matter in controversy against him, to forestall the verdict of the jury, and to deny his right to an impartial trial according to the forms of the law. If the defendants refused to make repairs when by the contract they were obliged to, it is the object of this action to compensate the plaintiff in damages for the injuries which he sustained

by such refusal, but they are not thereby precluded from showing that no repairs were needed, or that those procured were excessive or unnecessary. If, in setting up the machinery in the boat, a part of her timbers were removed by the defendants, by which she was rendered materially weaker, that too was a damage to be recompensed by this action, but it did not debar the defendants from showing that the vessel was otherwise weak and insufficient, and that by that means the machinery was prevented from working well. Whether it was the originally weak and defective construction of the boat, or the weakness occasioned by the acts of the defendants ; or whether it was partly the one and partly the other, if either, which caused the failure of the machinery, were matters for the consideration of the jury, who would determine and assess the damages according to the facts found.

It is contended by the respondent's counsel that the agreement of the defendants to furnish "machinery adapted to and suitable for the boat, and that would drive her from 12 to 15 miles per hour," was an undertaking on their part to provide machinery that would propel her, "as she was," at that speed. In other words, it is said that by this language they warranted her strength and capacity to endure the weight, shocks and friction of her machinery when in motion, and the force and action of winds and waves. It is difficult to frame an argument against a proposition so unreasonable and so unjust. The language does not warrant, nor did the parties contemplate it. The contract was to furnish engines and appurtenances adequate in weight, workmanship and power to run a boat of her size and dimensions at the proposed speed, it being understood that she was sufficiently strong for that purpose, of which the owner, as of course, took the risk. Few mechanics, we apprehend, could be found, who would be willing to undertake the manufacture of machinery "suitable" for boats, if thereby it was understood that they were to be held responsible for the sufficiency of such boats after their machinery was put in.

It appearing from the testimony that the improvements made by the plaintiff were made after the expiration of the

time within which the defendants stipulated for the privilege of making them, and consequently when they were under no legal obligation to do so, the rule of damages should have been the difference in value between the machinery furnished (provided the jury found it to have been defective) and that called for by the contract, adding thereto an allowance to the plaintiff of any expenses he had actually incurred in his business, as a consequence of the failure of the defendants to perform their contract. This last would include the expenses incurred for the board and wages of the captain, engineer and seamen, from the first of August, 1855, when the machinery was to have been delivered, to the time when it was in fact delivered, and the like expenses during the time actually lost by breakages whilst the plaintiff was testing the sufficiency of the machinery, and also during such reasonable time after the boat was laid up as, under the circumstances, was required to supply her with new and suitable engines. To these also may be added interest.

We were at first in doubt whether the plaintiff's claim for board and wages of seamen should not be confined to such time as was lost after the machinery was delivered, and up to and including a reasonable time for supplying other, on the ground of his right, upon the failure of the defendants to furnish it on the 1st of August, to consider the contract at an end and to proceed to supply himself elsewhere; and because his waiver of performance as to time might be considered an abandonment of any claim for damages on that account. But on further consideration we are satisfied this would be wrong. A waiver in such cases is made for the benefit of the party in default, and, as against him, should be construed strictly, and liberally in favor of the party making it. It is supposed to be granted at the request of the party indulged, and should be confined to the precise right waived, (which in this case was the right to refuse the machinery after the day,) and should not be extended to collateral matters. In this case there can be little doubt that the plaintiff was deterred from making exertions to procure other machinery by the conduct and assurances of the de-

fendant *Verbeck*, that that contracted for would be speedily completed.

It is almost needless for us to say, further, that the authorities cited by the respondent's counsel, 18 Vermont, 620, and 21 Wend., 342, do not establish, as a measure of damages in cases like this, the sum expended by the purchaser in making repairs, or furnishing other machinery, unless it be so expressly agreed. In the absence of such special agreement, the parties do not contemplate it. In those cases, where the defects, which were unimportant, extending only to a single article or small portion of the machinery and not to the whole subject of the contract, had been supplied by the purchasers on fair terms, evidence of what they had expended was admitted as a proper means of estimating the sum to be deducted, or the true amount of damages as measured by the ordinary rule.

It follows from the views that we have taken, that the judgment must be reversed, and a new trial awarded.